**Paul E. FARRELL; Frances G. Farrell, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 01–15435.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 5, 2002.*

Filed Dec. 24, 2002.

---

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Kenneth W. McWade, Kailua, HI, for the plaintiffs-appellants.

Kenneth W. Rosenberg, United States Department of Justice, Tax Division, Washington, DC, for the defendant-appellee.

Before: RYMER, THOMAS and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge.

We hold today that income earned by a taxpayer on Johnston Island, a U.S. insular possession, is not excludable from gross income as "foreign earned income" under § 911 of the Internal Revenue Code. Neither is it income derived from a source within a "specified possession" as defined by § 931 of the Code. We therefore affirm the district court.

## I. FACTS

Between 1994 and 1996, appellant Paul Farrell was employed by Raytheon Corporation. During those years, Farrell lived and worked on Johnston Island, a 591–acre island located approximately 700 miles west-southwest of Hawaii. It is the princi-

pal island of the Johnston Atoll, a U.S. military installation and bird refuge. *See* U.S. General Accounting Office, Report to the Chairman, Committee on Resources, House of Representatives, *U.S. Insular Areas—Application of the U.S. Constitution*, GAO/OGC 98–5 (app.II) at 50–52 (Nov.1997).

On Farrell's federal income tax returns for 1994, 1995 and 1996, Farrell (filing jointly with his wife) treated $70,000 of his earnings each year as excludable from gross income as "foreign earned income" under § 911 of the Internal Revenue Code. The exclusions were disallowed by the IRS. Farrell then filed amended returns seeking refunds for the years in question, claiming that his Johnston Island earnings were excludable under either § 911 ("foreign earned income") or § 931 (income from a "specified possession"). The refunds were denied, and Farrell filed suit in district court.

The district court granted the government's motion for summary judgment, ruling that a § 911 exclusion for "foreign earned income" did not apply because Johnston Island, being a U.S. possession, is not a foreign country. The court also held that Farrell's Johnston Island income did not qualify for exclusion under § 931 as income from a "specified possession" because § 931 defines "specified possession" to mean Guam, American Samoa and the Northern Mariana Islands—Johnston Island is not on the list. Finally, the court rejected Farrell's argument that his Johnston Island income was excludable under Treas. Reg. § 1.931–1, which continues to list Johnston Island as a possession of the United States for purposes of § 931. The court ruled that the regulation, although still on the books, implemented a prior version of § 931. In 1986, the present version of § 931 was enacted, rendering the pre-existing regulation flatly inconsis-

tent with the now-extant statutory language and, therefore, inoperative. The Farrells appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. A grant of summary judgment is reviewed de novo. *Oliver v. Keller,* 289 F.3d 623, 626 (9th Cir.2002).

## III. ANALYSIS

We agree with the district court that the Farrells' Johnston Island income is not excludable under either § 911 or § 931.

### A. Section 911

In pertinent part, 26 U.S.C. § 911 states:

**§ 911. Citizens or residents of the United States living abroad**

(a) Exclusion from gross income.—At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year—

(1) the foreign earned income of such individual, and

(2) the housing cost amount of such individual.

(b) Foreign Earned Income.—

(1) Definition.—For purposes of this section—

A) In general.—The term "foreign earned income" with respect to any individual means the amount received by such individual from sources within a foreign country or countries....

(d) Definitions and special rules.— For purposes of this section—

(1) Qualified individual.—The term "qualified individual" means an individual whose tax home is in a foreign country....

Pursuant to this section, an individual whose tax home is a foreign country may elect to exclude the amount received from sources within a foreign country. During the relevant time period, this excludable amount was limited to $70,000. Treasury Regulation § 1.911–2(h) provides that, "[t]he term 'foreign country' when used in a geographical sense includes any territory under the sovereignty of a government other than that of the United States."

█ Johnston Island is not a foreign country. It is a United States insular possession.

Johnston Atoll is located about 700 miles west-southwest of Honolulu. It consists today of two natural islands, Sand and Johnston, and two manmade islets, North and East (also known as Akau and Hikina), enclosed by an egg-shaped reef approximately twenty-one miles in circumference....

Although first discovered in 1796, the atoll was not formally claimed for the United States until March 1858 by the captain of the schooner Palestine. The schooner had been chartered by two Americans, William Parker and R.F. Ryan, specifically to find Johnston and Sand Islands and, if guano were discovered, to claim them under the Guano Islands Act [Act of Aug. 18, 1856, ch. 164, 11 Stat. 119, current version at 48 U.S.C. §§ 1411–1419 (1994) [1]]. The atoll

---

**1.** 48 U.S.C. § 1411 states:
**Guano districts; claim by United States—**
Whenever any citizen of the United States

discovers a deposit of guano on any island, rock, or key, not within the lawful jurisdiction of any other government, and not oc-

was located, the presence of guano was confirmed, a flag was raised, and signs were erected stating that the entire area was claimed for the United States and for the owners and charterers of the schooner.

The American claim was at first disputed. In June 1858, Samuel Allen, sailing on the Kalama under the Hawaiian flag and representing the Kingdom of Hawaii, tore down the U.S. flag and signs on Johnston Atoll and raised the Hawaiian flag. On July 27, 1858, the atoll was declared part of the domain of King Kamehameha IV. However, several months later, King Kamehameha revoked the lease on guano he had granted to Allen when he learned that the atoll had been claimed previously by the United States.

A large amount of guano was removed from the atoll during the next 50 years, but by 1920, Johnston and Sand Islands had been abandoned. As a result of a biological survey conducted by the U.S. Department of Agriculture and the Bernice Paushi Bishop Museum of Honolulu in 1923, President Calvin Coolidge designated Johnston and Sand Islands a bird refuge. In 1934, President Franklin Roosevelt placed Johnston, Sand, and Wake Islands and Kingman Reef under the control of the Secretary of the Navy. Johnston and Sand Islands remained under the additional jurisdiction of the Department of Agriculture for purposes of serving as a bird refuge.

With the advent of World War II, the airspace above and the waters within the three-mile marine boundaries of Johnston and Sand Islands were designated a naval defensive area by President Roosevelt. During the course of the

war, Sand and Johnston Islands were developed as a military air base and also served as a submarine refueling base. The atoll was heavily used during the war and, as use of the atoll increased, so too did the land area; the military dredged coral from the lagoon to increase the length of the runways.

In 1948, the Secretary of the Navy transferred operational control of the atoll to the Air Force. Over the next 10 years, the atoll was used by the Coast Guard as well as the Air Force and continued coral fill construction expanded the atoll by 25 acres. In 1958, two high-altitude nuclear tests were launched from the atoll. Nuclear testing resumed in 1962 with an agreement granting control of the atoll to the Atomic Energy Commission for the Pacific Atomic Tests.

Between 1963 and 1964, the actual acreage of Johnston and Sand islands was increased from 198 acres to 591 acres; additionally, two man-made islands were created-North (Akau) and East (Hikina)—adding another 24 and 17 acres respectively. At that time, the decision was made to refer to the area collectively as Johnston Atoll.

Between 1964 and 1973, the Air Force was an active presence on the atoll. In 1973, the Air Force agreed with the Defense Nuclear Agency that the latter would assume operational control of the atoll.

Johnston Atoll remains under the operational control of the Defense Nuclear Agency. It is a storage and disposal site for chemical munitions and a standby test site for atmospheric nuclear weapons testing. It remains a bird refuge, with the Fish and Wildlife Service

cupied by the citizens of any other government, and takes peaceable possession thereof, and occupies the same, such is-

land, rock, or key may, at the discretion of the President, be considered as appertaining to the United States.

of the Department of the Interior having taken over the duties previously assigned to the Department of Agriculture.

U.S. General Accounting Office, Report to the Chairman, Committee on Resources, House of Representatives, *U.S. Insular Areas—Application of the U.S. Constitution,* GAO/OGC 98–5 (app.II) at 51–52 (Nov.1997) (citations and footnotes omitted).

Having no local government or native population, Johnston Island is an unorganized unincorporated insular possession. *U.S. Insular Areas—Application of the U.S. Constitution, supra* at 10, 40; 6 New Encyclopaedia Britannica 598 (15th ed.2002). In addition, Johnston Atoll is not part of Guam, American Samoa, or the Northern Mariana Islands, and is specifically excluded from the islands making up the State of Hawaii. *See* 48 U.S.C. §§ 1421, 1661–1662, 1801 (1994); *U.S. Insular Areas—Application of the U.S. Constitution, supra* at 43–44; Act Admitting Hawaii to Statehood, Pub.L. No. 8–3, § 2, 73 Stat. 4 (1959), current version at 48 U.S.C. ch. 3, sec. 2 (1994).

Since Johnston Island is a U.S. possession, not a foreign country, income earned there cannot be excluded under § 911. *See Specking v. Commissioner,* 117 T.C. 95, 2001 WL 987795 (2001), 2001 U.S. Tax Ct. Lexis 40, at *35 ("Inasmuch as Johnston Island does not fall within the definition of a foreign country, the compensation petitioners earned on Johnston Island does not come within the definition of 'foreign earned income'. . . .")

### B. Section 931

Farrell also argues that he can exclude his Johnston Island income under § 931 as income from a specified possession. In pertinent part, 26 U.S.C. § 931 states:

### § 931. Income from sources within Guam, American Samoa, or the Northern Mariana Islands

(a) General Rule.—In the case of an individual who is a bona fide resident of a specified possession during the entire taxable year, gross income shall not include—

(1) income derived from sources within any specified possession, and

(2) income effectively connected with the conduct of a trade or business by such individual within any specified possession. . . .

*(c) Specified Possession.—For purposes of this section, the term "specified possession" means Guam, American Samoa, and the Northern Mariana Islands.*

(Emphasis added.)

■ By its explicit terms, § 931 applies only to income derived from sources within Guam, American Samoa and the Northern Mariana Islands. Acknowledging this, Farrell relies on Treas. Reg. § 1.931–1, which states in pertinent part:

**Treas. Reg. § 1.931–1 Citizens of the United States and domestic corporations deriving income from sources within a certain possession of the United States.**

(a) Definitions.

(1) As used in section 931 and this section, the term "possession of the United States" includes American Samoa, Guam, *Johnston Island,* Midway Islands, the Panama Canal Zone, Puerto Rico and Wake Island. However, the term does not include (i) the Virgin Islands and (ii), when used with respect to citizens of the United States, the term does not include Puerto Rico or, in the case

of taxable years beginning after December 31, 1972, Guam.

(Emphasis added.)

 This regulation was promulgated prior to the enactment of the Tax Reform Act of 1986. Prior to the 1986 legislation, § 931 permitted, on certain conditions, the exclusion of income derived from sources within a possession of the United States, except for sources within Puerto Rico, the Virgin Islands, or Guam. In other words, income derived from Johnston Island *could* be excluded. However, the Tax Reform Act of 1986 changed all of that, limiting the § 931 exclusion only to income derived from sources within Guam, American Samoa and the Northern Mariana Islands. In other words, income from Johnston Island could no longer be excluded. Nevertheless, Treas. Reg. § 1.931–1 remains on the books.

This regulation, if still valid, would support the view taken by Farrell. The problem, however, is that the regulation is flatly contradicted by the present version of § 931, and, therefore, cannot stand. *See Specking v. Commissioner*, 117 T.C. 95, 2001 WL 987795 (2001), 2001 U.S. Tax Ct. Lexis 40, at *30 ("The regulatory language on which petitioners rely defines the term 'possession' for purposes of old section 931. As we have concluded above, that provision no longer applies to petitioners. Consequently, the regulatory provision also has no application to them and is obsolete as to petitioners.")

 It is well-settled that when a regulation conflicts with a subsequently enacted statute, the statute controls and voids the regulation. *See Microsoft Corp. v.*

*C.I.R.,* 311 F.3d 1178, 1187–89 (9th Cir. 2002); *see Cramer v. C.I.R.,* 64 F.3d 1406, 1412 (9th Cir.1995) ("[W]e will uphold a Treasury regulation if it 'implement[s] the congressional mandate in some reasonable manner,' and is not 'plainly inconsistent' with the Code.") (citations omitted); *see also Scofield v. Lewis,* 251 F.2d 128, 132 (5th Cir.1958) ("A Regulation, valid when promulgated, becomes invalid upon the enactment of a statute in conflict with the Regulation.")

Finally, Farrell argues that the definition of "specified possession" in the current version of § 931 has not come into play because, he contends, Guam and the Northern Mariana Islands have not entered into implementing agreements with the United States. It is true that Congress made the excludability of income derived from Guam, American Samoa, and the Northern Mariana Islands contingent upon the signing of agreements between the United States and the specified possessions. *See* Pub.L. No. 99–514, § 1277, 100 Stat. 2600–02, as amended by Pub.L. No. 100–647, Title I, § 1012(z), Nov. 10, 1988, 102 Stat. 3531.[2] That contingency, however, only affects the taxability of income derived in Guam, American Samoa, and the Northern Mariana Islands. It does affect income derived from sources within other U.S. possessions. *See Specking v. Commissioner,* 117 T.C. 95, 2001 WL 987795 (2001), 2001 U.S. Tax Ct. Lexis 40, at *30 ("[N]othing in the legislative history supports petitioners' argument that Congress intended to keep old section 931 in force as to the other possessions should one or more of the specified possessions

---

2. The statute states:

(b) Special Rule for Guam, American Samoa, and the Northern Mariana Islands.— The amendments made by this subtitle shall apply with respect to Guam, American Samoa, or the Northern Mariana Islands (and to residents thereof and corporations created or organized therein) only if (and so long as) an implementing agreement under section 1271[of Pub.L. 99–514, set out as a note under this section] is in effect between the United States and such possession.

not implement a tax agreement with the United States.")

**AFFIRMED.**