T.C. Memo. 2006-51

UNITED STATES TAX COURT

L. BEN SMITH & CAROL SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5708-03.               Filed March 23, 2006.

<u>Steven T. Barta</u>, for petitioners.

<u>Jonathan J. Ono</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-
ciencies in, and accuracy-related penalties under section
6662(a)[1] on, petitioners' Federal income tax (tax):

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code (Code) in effect for the years at
issue.  All Rule references are to the Tax Court Rules of Prac-
(continued...)

| Year | Deficiency | Accuracy-Related Penalty Under Sec. 6662(a) |
|------|-----------|---------------------------------------------|
| 1999 | $16,935 | $3,387.00 |
| 2001 | 17,586 | 3,517.20 |

The only issue remaining for decision is whether petitioners are liable for 2001 for the accuracy-related penalty under section 6662(a).  We hold that they are.

FINDINGS OF FACT

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.

Petitioners resided in Hermiston, Oregon, at the time they filed the petition in this case.

Starting around June 1998, L. Ben Smith (Mr. Smith) began working for Raytheon Demilitarization Company (Raytheon) on Johnston Island.  Around April 1998, shortly before Mr. Smith's employment with Raytheon began, Mr. Smith attended an orientation session presented by Raytheon (Raytheon's orientation session).  During Raytheon's orientation session, Raytheon orally informed Mr. Smith that Johnston Island was not tax exempt and that he was to be liable for tax on the compensation that he earned while working on Johnston Island.  Around June 1, 1998, after Raytheon's orientation session, Raytheon issued a so-called

[1](...continued)
tice and Procedure.

assignment letter to Mr. Smith (Raytheon's June 1, 1998 assignment letter), the receipt of which Mr. Smith acknowledged by signing that letter.  Raytheon's June 1, 1998 assignment letter, inter alia, described certain benefits that Raytheon was to provide to Mr. Smith as a result of Mr. Smith's working on Johnston Island.  That letter stated, inter alia:  "Johnston Island is not tax exempt; therefore, standard tax obligations apply."  Raytheon included with Raytheon's June 1, 1998 assignment letter certain documents (Raytheon's enclosure to Raytheon's June 1, 1998 assignment letter) that set forth certain terms and conditions of Mr. Smith's employment with Raytheon.  Among the documents in Raytheon's enclosure to Raytheon's June 1, 1998 assignment letter was a document entitled "TAX TREATMENT OF JOHNSTON ISLAND ASSIGNMENT EXPENSES" (Raytheon's description of the tax treatment of Johnston Island assignment expenses), which provided:

| Assignment Expense | Tax Classification | Employee W-2 and Tax Withholding Treatment |
| --- | --- | --- |
| 1. Travel, in-transit | Relocation expense | Subject to W-2 reporting-Not subject to withholding if deductible |
| 2. Remote site differential | Compensation | Taxable |
| 3. Subsistence and quarters | Business travel expense | Taxable |
| 4. Off-island rotation | Personal travel | Taxable |
| 5. Emergency leave | Compensation | Taxable |

NOTE:  You should also consult your personal tax advisor for application to your particular tax considerations.

Throughout 1999 and 2001, Mr. Smith continued to work for

Raytheon on Johnston Island.[2]  During 1999 and 2001, Mr. Smith received wages from Raytheon totaling $92,276 and $99,980, respectively.

Around December 12, 2000, Raytheon issued another letter to Mr. Smith (Raytheon's December 12, 2000 letter) that included revisions to certain terms and conditions of his employment on Johnston Island.  Raytheon's December 12, 2000 letter stated, inter alia:  "Johnston Island is not tax exempt; therefore, standard tax obligations apply."  Raytheon included with Raytheon's December 12, 2000 letter certain documents, including a document that was identical to Raytheon's description of the tax treatment of Johnston Island assignment expenses.

On March 9, 2000, the Internal Revenue Service (IRS) issued a news release entitled "Johnston Inland [sic] Individuals May Not Claim Income Exclusion" (IRS March 9, 2000 news release).  That news release stated in pertinent part:

> The Internal Revenue Service reminds individuals in an unincorporated U.S. territory, such as Johnston Island, that they may not claim the exclusion for personal service income earned in a U.S. possession under section 931.  They also cannot exclude this income as "foreign earned income" under the exclusion provision in section 911.
>
> At one time Johnston Island was listed as a U.S. possession for purposes of the possessions exclusion under

---

[2]Throughout 1999 and 2001, Mr. Smith worked on Johnston Island for Washington Group International, formerly Raytheon. For convenience, we shall hereinafter refer only to Raytheon, and not to Washington Group International.

the 1954 Code; however, the law was changed under amendments enacted by the Tax Reform Act of 1986. Johnston Island is not a "specified possession" for purposes of new section 931, so income earned on the Island is not subject to exclusion.

The IRS published Publication 570, Tax Guide for Individuals with Income From U.S. Possessions, for use in the preparation of individual tax returns for the taxable year 2001 (IRS Publication 570 for 2001).  IRS Publication 570 for 2001 stated in pertinent part:

> For 2001, the possession exclusion applies only to individuals who are bona fide residents of American Samoa. * * *
>
>     Individuals in the following U.S. possessions or territories are **not** eligible for the possession exclusion discussed here.
>
> *      *      *      *      *      *      *
>
> • Johnston Island

Sometime prior to November 13, 2001, an individual named Brian Jordan (Mr. Jordan)[3] sent a letter to President George W. Bush (Mr. Jordan's letter to President Bush).  That letter stated in pertinent part:

> Subject:  CFR 26, Vol 10, Part 1, (secs 1.908 to 1.1000), Revised as of 1 April 1997
>
> Dear Sir:
>
> I would like to know if the above mentioned subject is still current for Johnston Atoll (Island) because I

---

[3]The record does not disclose who Mr. Jordan is or his relationship, if any, to petitioners.

have been unable to obtain an answer from the I.R.S.

On November 13, 2001, in response to Mr. Jordan's letter to President Bush, the IRS Center in Philadelphia, Pennsylvania, sent a letter to Mr. Jordan (IRS November 13, 2001 letter to Mr. Jordan) that was signed by David L. Medeck, who was identified in that letter as "Field Director, Accounts Management". The IRS November 13, 2001 letter to Mr. Jordan stated in pertinent part:

> I am responding to your letter to President George W. Bush. You asked about the Code of Federal Regulations (CFR) as it pertains to Johnston Island.
>
>     *        *        *        *        *        *        *
>
> I am enclosing 26 CFR 1.931-1. These regulations are current as of October 24, 2001.

Attached to the IRS November 13, 2001 letter to Mr. Jordan was a copy of section 1.931-1, Income Tax Regs., which the Department of the Treasury (Treasury) promulgated under section 931 prior to its amendment by section 1272(a) of the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, 100 Stat. 2593.[4] (We shall refer to section 931 prior to its amendment by the TRA 1986 as old section 931.)

On March 2, 2000, and March 6, 2002, respectively, petitioner signed Form 1040, U.S. Individual Income Tax Return, for each of their taxable years 1999 (1999 joint return) and 2001

_____

[4]See _infra_ note 8.

(2001 joint return).[5]  Thereafter, they filed their 1999 joint
return and their 2001 joint return.[6]  In the 1999 joint return,
petitioners reported wage income of $92,276 and claimed an
exclusion from gross income of $79,781 ($79,781 exclusion of 1999
wages).  In the 2001 joint return, petitioners reported wage
income of $99,980 and claimed an exclusion from gross income of
$99,980 ($99,980 exclusion of 2001 wages).  On page 1, line 21 of
the 2001 joint return, petitioners included the following nota-
tion with respect to the $99,980 exclusion of 2001 wages:  "CODE
SEC 931 DEDUCT-SEE ATTACHED".  Petitioners attached to the 2001
joint return a document entitled "Federal Supplemental Informa-
tion" (petitioners' attachment to their 2001 joint return).  That
document stated:  "TAXPAYER WORKED ON JOHNSTON ISLAND ATOLL
DURING TAX YEAR AND SUBSEQUENT TO TITLE 26, VOL. 10, PART 1
(SECTIONS 1.908 TO 1.1000), 26CFR 1.931-1 (REVISION 4-1-97),
TAXPAYER IS ENTITLED TO EXCLUDE EARNINGS FROM REPORTABLE INCOME."
(Reproduced literally.)

　　Respondent issued to petitioners a notice of deficiency
(notice) with respect to their taxable years 1999 and 2001.  In
that notice, respondent determined, inter alia, to disallow

---

[5]On Feb. 26, 2000, and Feb. 27, 2002, respectively, Leland
Rubesh signed the 1999 joint return and the 2001 joint return as
return preparer.

[6]The record does not disclose the respective dates on which
petitioners filed their 1999 joint return and their 2001 joint
return.

petitioners' $79,781 exclusion of 1999 wages and petitioners'
$99,980 exclusion of 2001 wages.  Respondent further determined
in the notice that petitioners are liable for 1999 and 2001 for
the accuracy-related penalty under section 6662(a) because of:
(1) Negligence or disregard of rules or regulations under section
6662(b)(1) or (2) a substantial understatement of tax in peti-
tioners' 2001 joint return under section 6662(b)(2).

                              OPINION

     We must determine whether petitioners are liable for 2001
for the accuracy-related penalty under section 6662(a) because of
negligence under section 6662(b)(1) or a substantial understate-
ment of tax under section 6662(b)(2).[7]

     Section 6662(a) imposes an accuracy-related penalty equal to
20 percent of the underpayment to which section 6662 applies.
Section 6662 applies to the portion of any underpayment which is
attributable to, inter alia, negligence, sec. 6662(b)(1), or a
substantial understatement of tax, sec. 6662(b)(2).

     The term "negligence" in section 6662(b)(1) includes any
failure to make a reasonable attempt to comply with the Code.
See sec. 6662(c).  Negligence has also been defined as a failure
to do what a reasonable person would do under the circumstances.
See Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992),

---

[7]Respondent concedes that petitioners are not liable for
1999 for the accuracy-related penalty under sec. 6662(a).

affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990). A return position that has a reasonable basis within the meaning of section 1.6662-3(b)(3), Income Tax Regs., is not attributable to negligence. Sec. 1.6662-3(b)(1), Income Tax Regs. The meaning of the term "reasonable basis" is set forth in section 1.6662-3(b)(3), Income Tax Regs., as follows:

> Reasonable basis is a relatively high standard of tax reporting, that is, significantly higher than not frivolous or not patently improper. The reasonable basis standard is not satisfied by a return position that is merely arguable or that is merely a colorable claim. If a return position is reasonably based on one or more of the authorities set forth in §1.6662-4(d)(3)(iii) (taking into account the relevance and persuasiveness of the authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard even though it may not satisfy the substantial authority standard as defined in §1.6662-4(d)(2). (See §1.6662-4(d)(3)(ii) for rules with respect to relevance, persuasiveness, subsequent developments, and use of a well-reasoned construction of an applicable statutory provision for purposes of the substantial understatement penalty.) In addition, the reasonable cause and good faith exception in §1.6664-4 may provide relief from the penalty for negligence or disregard of rules or regulations, even if a return position does not satisfy the reasonable basis standard.

A return position that does not have a reasonable basis is attributable to negligence. Van Camp & Bennion v. United States, 251 F.3d 862, 866 (9th Cir. 2001).

For purposes of section 6662(b)(2), there is a substantial understatement of tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of 10

percent of the tax required to be shown in the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). An understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in such return. See sec. 6662(d)(2)(A). The amount of the understatement is to be reduced by that portion of the understatement which is attributable to (1) "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment" (substantial authority), sec. 6662(d)(2)(B)(i), or (2) any item if (a) "the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return" (adequate disclosure), sec. 6662(d)(2)(B)(ii)(I), and (b) "there is a reasonable basis for the tax treatment of such item by the taxpayer" (reasonable basis), sec. 6662(d)(2)(B)(ii)(II).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion. Sec. 6664(c)(1). The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess such taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such

as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Before turning to petitioners' position under section 6662, we shall address section 7491(c).  Although respondent must have commenced respondent's examination of petitioners' return for the year at issue after July 22, 1998, the parties do not address section 7491(c).  Respondent has the burden of production under that section with respect to the accuracy-related penalty under section 6662(a).  To meet that burden, respondent must come forward with sufficient evidence showing that it is appropriate to impose the accuracy-related penalty.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Although respondent bears the burden of production with respect to the accuracy-related penalty that respondent determined for petitioners' taxable year 2001, respondent "need not introduce evidence regarding reasonable cause, substantial authority, or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues."  Id.

Old section 931 permitted citizens of the United States to exclude income derived from sources within possessions of the United States, except Puerto Rico, the U.S. Virgin Islands, and Guam, if certain conditions were satisfied.  Although old section 931 did not define the term "possession of the United States", section 1.931-1, Income Tax Regs., promulgated under old section 931 provided that the term "possession of the United States"

included Johnston Island.[8]

Section 1272(a) of the TRA 1986 amended old section 931 to exclude from income, in the case of an individual who is a bona fide resident of a specified possession during the entire taxable year, gross income derived from sources within any such specified possession. Section 931, as amended by section 1272(a) of the TRA 1986, defines the term "specified possession" to mean only Guam, American Samoa, and the Northern Mariana Islands. Sec. 931(c).

Around 6½ months before petitioners signed their 2001 joint return,[9] we issued our Opinion in Specking v. Commissioner, 117

---

[8]Sec. 1.931-1, Income Tax Regs., promulgated under sec. 931 prior to its amendment by the TRA 1986 provided in pertinent part:

**§ 1.931-1. Citizens of the United States and domestic corporations deriving income from sources within a possession of the United States.**

(a) Definitions. (1) As used in section 931 and this section, the term "possession of the United States" includes American Samoa, Guam, Johnston Island, Midway Islands, the Panama Canal Zone, Puerto Rico, and Wake Island. * * *

On Apr. 6, 2005, the Treasury Department promulgated T.D. 9194, 2005-20 I.R.B. 1016, which revised sec. 1.931-1, Income Tax Regs., promulgated under old section 931. Subsequent to that revision, sec. 1.931-1, Income Tax Regs., provides in pertinent part: "**§ 1.931-1. Exclusion of certain income from sources within Guam, American Samoa, or the Northern Mariana Islands.**-- [Reserved]."

[9]Although the record establishes the date on which petition- ers signed their 2001 joint return, the record does not disclose
(continued...)

T.C. 95 (2001), affd. sub nom. <u>Haessly v. Commissioner</u>, 68 Fed. Appx. 44 (9th Cir. 2003), affd. sub nom. <u>Umbach v. Commissioner</u>, 357 F.3d 1108 (10th Cir. 2003).  In <u>Specking</u>, we held, inter alia:  (1) Johnston Island does not constitute a specified possession for purposes of section 931 as amended by the TRA 1986; and (2) the amendment of old section 931 by the TRA 1986 became effective as to taxpayers who earned compensation while working on Johnston Island for taxable years that began after December 31, 1986.  <u>Id.</u> at 108-109.  In so holding, we rejected as misplaced the reliance by the taxpayers in <u>Specking</u> on section 1.931-1, Income Tax Regs., promulgated under old section 931. <u>Id.</u> at 110.  We stated:

> The regulatory language on which petitioners rely defines the term "possession" for purposes of old section 931.  As we have concluded above, that provision no longer applies to petitioners.  Consequently, the regulatory provision also has no application to them and is obsolete as to petitioners.

<u>Id.</u> at 110-111.

Petitioners nonetheless claimed the $99,980 exclusion of 2001 wages in their 2001 joint return.  According to petitioners' attachment to their 2001 joint return, they did so in reliance on section 1.931-1, Income Tax Regs., that the Treasury promulgated under old section 931 and that we found in <u>Specking</u> was obsolete with respect to taxpayers who earned compensation while working

---

[9](...continued)
the date on which petitioners filed that return.

on Johnston Island for taxable years that began after December 31, 1986.  On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a) and (b)(1) that respondent determined for 2001.

We turn now to petitioners' position that they are not liable for 2001 for the accuracy-related penalty under section 6662(a).  According to petitioners, they are not liable for that penalty because (1) there was substantial authority for claiming the $99,980 exclusion of 2001 wages in their 2001 joint return, (2) there was adequate disclosure of the relevant facts affecting such tax treatment of those wages, and (3) there was a reasonable basis for such tax treatment.

We shall address only whether petitioners had a reasonable basis in claiming the $99,980 exclusion of 2001 wages in their 2001 joint return.  If the record were to establish that petitioners did not have a reasonable basis in claiming that exclusion, such return position of petitioners would be attributable to negligence.[10]  <u>Van Camp & Bennion v. United States</u>, 251 F.3d at 866.

In support of petitioners' position that they had a reason-

---

[10]A fortiori, a return position that did not have a reasonable basis is not a position for which there was substantial authority under sec. 6662(d)(2)(B)(i) and the regulations thereunder.

able basis in claiming the $99,980 exclusion of 2001 wages in their 2001 joint return, petitioners advance three arguments as follows:

> It is * * * petitioners' position that there was a reasonable basis for questioning the effective date of the proposed amendments to I.R.C. sec. 931 [old section 931] contained in the Tax Reform Act [TRA 1986]. It has never been established that the so called "specific possessions" have ever entered into the required agreements regarding tax administration, which the Tax Reform Act included as a condition precedent to the effective date of the proposed amendments. This was the basis upon which the Court's decision in Specking et al, supra [Specking v. Commissioner, 117 T.C. 95 (2001), affd. sub nom. Haessly v. Commissioner, 68 Fed. Appx. 44 (9th Cir. 2003), affd. sub nom. Umbach v. Commissioner, 357 F.3d 1108 (10th Cir. 2003)] was appealed to the 9th and 10th Circuit Courts of Appeal, the decisions affirming to Tax Courts opinion not being issued until 2003. Based upon the respondent's continued publication of Treas. Reg. 1.931-1, Mr. Medeck's response [IRS November 13, 2001 letter to Mr. Jordan] to the Presidential inquiry, and the question posed in the appeal of the Specking et al, supra opinion,[11] there was a reasonable basis for the petitioners treatment of L. Ben Smith's Johnston Island income on the return filed for the year 2001, sufficient to relieve them from liability for the I.R.C. sec. 6662(a) additions to the tax. [Reproduced literally.]

We consider first petitioners' arguments that they had a reasonable basis in claiming the $99,980 exclusion of 2001 wages in their 2001 joint return because: (1) The amendment by the TRA

---

[11]On Mar. 6, 2002, when petitioners signed their 2001 joint return, no notice of appeal had been filed with respect to Specking v. Commissioner, 117 T.C. 95 (2001), affd. sub nom. Haessley v. Commissioner, 68 Fed. Appx. 44 (9th Cir. 2003), affd. sub nom. Umbach v. Commissioner, 57 F.3d 1108 (10th Cir. 2003). It was not until May 9, 2002, that the taxpayers involved filed respective notices of appeal to the U.S. Courts of Appeals for the Ninth Circuit and the Tenth Circuit.

1986 of old section 931 was not effective for their taxable year 2001 since certain implementing agreements were not entered into between the United States and the specified possessions identified in section 931 after that amendment; and (2) after the amendment by the TRA 1986 of old section 931 the Treasury did not amend or withdraw section 1.931-1, Income Tax Regs., promulgated under old section 931, and therefore petitioners were entitled to rely on that regulation. Around 6½ months before petitioners signed their 2001 joint return,[12] we rejected both of those arguments in Specking v. Commissioner, 117 T.C. 95 (2001). As discussed above, in Specking, we held that the amendment of old section 931 by the TRA 1986 became effective as to taxpayers who earned compensation while working on Johnston Island for taxable years that began after December 31, 1986. Id. at 109-110. In so holding, we rejected the argument advanced by the taxpayers in Specking and petitioners here that the existence of certain implementing agreements between the United States and the specified possessions identified in section 931 after its amendment by the TRA 1986 was a condition precedent to the effective date of such amendment of old section 931. Id. As also discussed above, in Specking, we further rejected the argument of the taxpayers there and petitioners here that section 1.931-1, Income Tax Regs., promulgated under old section 931 continued to apply after

_____

[12]See supra note 6.

the TRA 1986 amended old section 931 because the Treasury did not amend or withdraw that regulation. Id. at 110-111. In Specking, we held that old section 931 no longer applied to the taxpayers there, id., and that "Consequently, the regulatory provision also has no application to them and is obsolete as to petitioners [in Specking]", id. at 111. In so holding, we stated:

> We do not agree with petitioners that respondent's failure to amend section 1.931-1, Income Tax Regs., supports petitioners' position. As the Supreme Court recently observed regarding another unamended regulation provision: "The Treasury's relaxed approach to amending its regulations to track Code changes is well documented. * * * The absence of any amendment * * * is more likely a reflection of the Treasury's inattention than any affirmative intention on its part to say anything at all." United Dominion Indus., Inc. v. United States, 532 U.S. * * * [822, 836-837 (2001)].

Id.[13]

---

[13]Even before we issued our Opinion in Specking v. Commissioner, 117 T.C. 95 (2001), affd. sub nom. Haessly v. Commissioner, 68 Fed. Appx. 44 (9th Cir. 2003), affd. sub nom. Umbach v. Commissioner, 57 F.3d 1108 (10th Cir. 2003), the United States District Court for the District of Hawaii (U.S. District Court) held that taxpayers who earned compensation during 1994, 1995, and 1996 while working on Johnston Island must include such compensation in gross income for those years. Farrell v. United States, 87 AFTR 2d 2001-1159, 2001-1 USTC par. 50,279 (D. Haw. 2001), affd. 313 F.3d 1214 (9th Cir. 2002). In so holding, the U.S. District Court rejected the arguments of the taxpayers in Farrell and petitioners here (1) that the amendment by the TRA 1986 of old section 931 was not effective because certain implementing agreements were not entered into between the United States and the specified possessions identified in sec. 931 after that amendment and (2) that the taxpayers were entitled to rely on sec. 1.931-1 Income Tax Regs., promulgated under old section 931 because that regulation was not amended or withdrawn by the Treasury after the TRA 1986 amended old section 931. In rejecting the argument of the taxpayers in Farrell with respect to the
(continued...)

We conclude that petitioners' arguments relating to (1) the effective date of the amendment by the TRA 1986 of old section 931 and (2) the failure by the Treasury to amend or withdraw section 1.931-1, Income Tax Regs., did not provide petitioners with a reasonable basis in claiming the $99,980 exclusion of 2001

---

[13](...continued) effective date of the amendment by TRA 1986 of old section 931, the U.S. District Court stated:

> the outdated Section 931 was no longer in the Internal Revenue Code in the 1994 to 1996 period. Had Congress intended that the outdated Section 931 have continuing effect, it would have stated so in the amended Section 931.

Farrell v. United States, 87 AFTR 2d 2001-1159, at 2001-1161 n.5, 2001-1 USTC par. 50,279, at 87,552 n.5.

In rejecting the argument of the taxpayers in Farrell that sec. 1.931-1, Income Tax Regs., promulgated under old section 931 allowed them to exclude the income earned while working on Johnston Island, the U.S. District Court stated:

> Although Section 931 was amended, Regulation 1.931-1 was not amended to reflect the changes made to Section 931. See 10 United States Tax Reporter 9312 (2000) (explanation of IRC section 931) ("Caution: The Treasury has not yet amended Reg section 1.931-1 to reflect changes made by P.L. 99-514"). To read Regula-tion 1.931-1 as including Johnston Island as a "speci-fied possession" for purposes of 26 U.S.C. section 931 [(]1986) would be contrary to the plain intent of Congress, which is to allow income to be excluded from gross income for only Guam, American Samoa, and the Northern Mariana Islands. Accordingly, this court does not give any deference to the Treasury's outdated interpretation of "possession" in Regulation 1.931-1.
> * * *

Farrell v. United States, 87 AFTR 2d 2001-1159, at 2001-1160 to 2001-1161, 2001-1 USTC par. 50,279, at 87,552.

wages in their 2001 joint return.

We consider now petitioners' third argument in support of their position that they had a reasonable basis in claiming the $99,980 exclusion of 2001 wages in their 2001 joint return. As we understand that argument, petitioners maintain that in claiming that exclusion they relied on the IRS November 13, 2001 letter to Mr. Jordan[14] that the IRS sent in response to Mr. Jordan's letter to President Bush.[15] On the record before us, we reject any such argument. The record does not establish that petitioners were even aware of the IRS November 13, 2001 letter to Mr. Jordan when they signed their 2001 joint return.

In relying on old section 931 and section 1.931-1, Income Tax Regs., promulgated under old section 931 in claiming the $99,980 exclusion of 2001 wages in their 2001 joint return, petitioners not only ignored Specking v. Commissioner, 117 T.C. 95 (2001), and Farrell v. United States, 87 AFTR 2d 2001-1159,

---

[14]As stated supra note 3, the record does not disclose who Mr. Jordan is or his relationship, if any, to petitioners.

[15]The IRS November 13, 2001 letter to Mr. Jordan stated in pertinent part:

I am responding to your letter to President George W. Bush. You asked about the Code of Federal Regulations (CFR) as it pertains to Johnston Island.

    *       *       *       *       *       *       *

I am enclosing 26 CFR 1.931-1. These regulations are current as of October 24, 2001.

2001-1 USTC par. 50,279 (D. Haw. 2001), affd. 313 F.3d 1214 (9th Cir. 2002), they also disregarded admonitions from Mr. Smith's employer and from the IRS that compensation earned while working on Johnston Island is taxable and may not be excluded from income. In this regard, before petitioners signed their 2001 joint return, (1) Mr. Smith received multiple warnings from his employer, one a little less than 15 months before petitioners signed that return, that Johnston Island was not tax exempt and that "therefore, standard tax obligations apply" and that certain so-called assignment expenses were to be treated as compensation that is taxable; (2) the IRS March 9, 2000 news release was issued that, inter alia, stated: "Johnston Island is not a 'specified possession' for purposes of new section 931, so income earned on the Island is not subject to exclusion"; and (3) IRS Publication 570 for 2001 was issued that provided, inter alia, that taxpayers who earned compensation while working on Johnston Island "are **not** eligible for the possession exclusion discussed here [in this publication]". Under the circumstances extant when petitioners signed their 2001 joint return, petitioners, at a minimum, should have consulted a professional about whether to claim the $99,980 exclusion of 2001 wages in that return and relied on such professional's advice. See Zmuda v. Commissioner, 731 F.2d 1417, 1422-1423 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Petitioners do not contend that they did so and do not

claim that they are not liable for 2001 for the accuracy-related penalty under section 6662(a) because they relied on the advice of a professional.

On the record before us, we find that petitioners did not have a reasonable basis in claiming the $99,980 exclusion of 2001 wages in their 2001 joint return. On that record, we further find that petitioners' return position in claiming the $99,980 exclusion of 2001 wages was attributable to negligence. See Van Camp & Bennion v. United States, 251 F.3d at 866.

On the record before us, we further find that petitioners have failed to carry their burden of establishing that there was reasonable cause for, and that they acted in good faith with respect to, any portion of the underpayment for petitioners' taxable year 2001. See sec. 6664(c)(1); sec. 1.6664-4(b)(1), Income Tax Regs. On that record, we find that petitioners have failed to carry their burden of showing any circumstances that would enable us to find that they had reasonable cause for, and acted in good faith in, claiming the $99,980 exclusion of 2001 wages in their 2001 joint return.[16]

---

[16]For example, petitioners have failed to show that, after we issued Specking v. Commissioner, 117 T.C. 95 (2001), they consulted a professional who advised them to claim the $99,980 exclusion of 2001 wages in their 2001 joint return. Indeed, petitioners have failed to show that, after we issued Specking, they even made any efforts to consult a professional about whether to make such a claim. See Zmuda v. Commissioner, 731 F.2d 1417, 1422-1423 (9th Cir. 1984), affg. 79 T.C. 714 (1982).

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that they are not liable for 2001 for the accuracy-related penalty under section 6662(a) and (b)(1).[17]

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.[18]

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered for respondent with respect to the deficiency for 1999 and the deficiency and the accuracy-related penalty under section 6662(a) for 2001 and for petitioners with respect to the accuracy-related penalty under section 6662(a) for 1999.</u>

---

[17]In light of our finding that petitioners are liable for 2001 for the accuracy-related penalty because of negligence under sec. 6662(b)(1), we shall not address respondent's argument that petitioners are liable for that year for that penalty because of a substantial understatement of tax under sec. 6662(b)(2).

[18]We note that <u>Taibo v. Commissioner</u>, T.C. Memo. 2004-196, is materially distinguishable from the instant case.  In <u>Taibo</u>, the taxpayer, unlike petitioners in the instant case, filed his return for the year in question (i.e., 2000) prior to the issuance of <u>Specking v. Commissioner</u>, <u>supra</u>.