T.C. Memo. 2017-101

UNITED STATES TAX COURT

PAUL S. MUDRICH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20719-14.                      Filed June 1, 2017.

Paul S. Mudrich, pro se.

<u>S. Mark Barnes</u>, for respondent.

MEMORANDUM OPINION

BUCH, <u>Judge</u>:  The parties submitted this case fully stipulated under

Rule 122.[1]  Paul S. Mudrich earned a bonus in 2006 while married to Lauri

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code (Code) in effect for the year in issue.

[*2] Mudrich.[2]  He received that bonus in 2007, the year in issue, while still married to Lauri and paid her one-half of the bonus net of taxes.  They executed an agreement that the bonus was community property, that Mr. Mudrich would pay Lauri one-half of the bonus net of taxes, and that he would report the bonus on his return.  Mr. Mudrich failed to file a timely return for 2007.  When he filed the return, Mr. Mudrich claimed an alimony deduction for the payment to Lauri.  The Commissioner issued a notice of deficiency disallowing that deduction and determining an addition to tax and a penalty.

In general, alimony is a division of income that is paid under a divorce or separation agreement and that meets additional statutory requirements.[3]  Because this payment was not made pursuant to a divorce or separation agreement, it is not alimony.  Because Mr. Mudrich did not file a timely return for 2007, he is liable for an addition to tax for failure to timely file.  And the Commissioner has met his burden of production to show that an addition to tax and an accuracy-related penalty apply.

---

[2]During 2007 Mr. Mudrich divorced Lauri and married Kyera Mudrich.  To avoid confusion, we will refer to Mr. Mudrich's spouse and his former spouse by their first names.

[3]See sec. 71(b)(1).

**[*3]**                                    Background

The facts that are central to this case involve a bonus Mr. Mudrich earned

and the payment of a portion of that bonus to Lauri, who was his wife during 2006

and the first part of 2007. The chronology is as follows:

- Mr. Mudrich performed work as an attorney in 2006, and that work gave rise to a future bonus payment.

- In January 2007 Mr. Mudrich filed for divorce from Lauri.[4]

- Mr. Mudrich received the bonus for work performed in 2006. The gross amount of the bonus was $250,000, and after tax withholding Mr. Mudrich received $156,617.92.

- On May 18, 2007, Mr. Mudrich paid Lauri $74,753, an amount that represents approximately one-half of his 2006 bonus net of withholding taxes.

- On May 21, 2007, Lauri signed a document titled "Stipulation and Order Re: 2006 Bonus", which provided that Mr. Mudrich would pay her one-half of his bonus net of taxes and report the bonus on his return (bonus agreement). The document included an order line for the superior court judge to sign.

- On June 18, 2007, Mr. Mudrich signed the bonus agreement to pay Lauri one-half of his bonus net of taxes and report the bonus on his return.

---

[4]We take judicial notice of the docket in Mudrich v. Mudrich, No. D07-00594 (Cal. Super. Ct. filed Jan. 31, 2007). The case is still active. The parties have filed agreements related to certain assets, but the superior court has not entered a property settlement.

[*4] • On July 23, 2007, the superior court received a document titled "Stipulation & Order Re: 2006 Bonus".

• On August 8, 2007, the superior court issued an order terminating the marriage and determining spousal support (support order).

I. The Bonus Agreement

Mr. Mudrich and Lauri executed an agreement regarding Mr. Mudrich's bonus. The bonus agreement is a proposed order titled "Stipulation and Order Re: 2006 Bonus" and provides:

• Mr. Mudrich "received in 2007 a bonus for his work in 2006", and that bonus is his and Lauri's "community property".

• Mr. Mudrich must pay to Lauri "by 5/18/07 * * * one-half of his 2006 bonus net of withholding".

• Mr. Mudrich "shall report the 2006 bonus on his 2007 state and federal income tax returns."

• "The Court reserves jurisdiction to allocate the withholding and allocate the payment of state and federal income taxes" on the 2006 bonus.

• Mr. Mudrich and Lauri "specifically stipulate (agree) that all taxes due on the bonus are their community debt."

II. The Support Order

Subsequently, the superior court entered a support order providing that Mr. Mudrich "shall pay * * * [Lauri] $3,270 per month temporary spousal support." As additional support, the superior court required Mr. Mudrich to "pay * * *

[*5] [Lauri] 31.3% from any income * * * [Mr. Mudrich] earns in excess of $12,500 per month." The superior court credited Mr. Mudrich with payments made as of June 1, 2007. The support order did not mention the payment of the 2006 bonus. A passage in the support order referred to a "percentage of bonus as additional support", but that passage was stricken by hand and initialed by counsel for Mr. Mudrich and Lauri.

During June through December 2007 Mr. Mudrich paid Lauri $3,100 per month.

In 2008 Lauri filed with the superior court a motion for an order to show cause. She requested that the superior court order Mr. Mudrich to pay her delinquent support payments. She attached as an exhibit a list of court-ordered payments and shortfalls beginning June 2007. She did not list the payment of the 2006 bonus.

III.    Reporting and the Notice of Deficiency

Mr. Mudrich did not file a timely return for 2007. The Commissioner prepared a substitute for return in November 2010. On February 11, 2013, Mr. Mudrich filed a joint, amended return for 2007 with his new spouse, Kyera. They claimed a deduction for alimony of $127,228. A certified public accountant prepared their return.

**[\*6]** The Commissioner sent Mr. Mudrich a notice of deficiency, disallowing the deduction for alimony paid and determining an addition to tax for failure to timely file and an accuracy-related penalty as well as other correlative adjustments. While residing in Victor, Idaho, Mr. Mudrich filed a timely petition and alleged that he is entitled to an alimony deduction, including a deduction for the portion of the 2006 bonus he paid to Lauri. Because the parties agreed that the facts are not in dispute, we granted the parties' motion to submit the case fully stipulated under Rule 122.

## Discussion

Mr. Mudrich deducted a payment made to Lauri that was one-half of his bonus net of taxes. After concessions by both parties,[5] we must decide whether this payment is alimony. We must also decide whether Mr. Mudrich is liable for an addition to tax for failure to timely file and for an accuracy-related penalty.

---

[5]There are three groups of payments that make up Mr. Mudrich's deduction for alimony of $127,228: the lump-sum cash payment of $74,753 from his bonus, the seven payments of $3,100 each, and a remainder of $30,775. The Commissioner concedes that the seven payments totaling $21,700 are alimony. In the motion to submit the case under Rule 122 Mr. Mudrich concedes that the remaining $30,775 is not alimony.

**[*7]** I.      <u>Burden of Proof</u>

The Commissioner's determinations in the notice of deficiency are generally presumed correct, and taxpayers bear the burden of proving otherwise.[6] In limited situations the burden may shift to the Commissioner under section 7491(a), but there is not enough information in the record here to conclude that the burden should shift under section 7491(a), and Mr. Mudrich does not argue that it should. Accordingly, the burden remains on him. Taxpayers bear the burden of proving that they have met all requirements necessary to be entitled to their claimed deductions.[7]

II.      <u>Alimony Deduction</u>

Payments incident to divorce generally fall into one of two categories: alimony or property settlements. In general, alimony is a division of income, and property settlements are a division of marital property.[8] A property settlement is not a taxable event and does not give rise to any gain or loss.[9] In contrast, alimony

---

[6]Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

[7]Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).

[8]<u>See</u> <u>Rogers v. Commissioner</u>, T.C. Memo. 2005-50, 89 T.C.M. (CCH) 850, 851 (2005).

[9]Sec. 1041.

**[*8]** payments give rise to a deduction for the paying spouse and to income for the receiving spouse.[10]

An alimony payment is any cash payment that satisfies the four requirements of section 71(b)(1): (A) the payment is received by (or on behalf of) a spouse under a divorce or separation instrument; (B) the divorce or separation instrument does not designate the payment as one that is not includible in gross income of the payee and not allowable as a deduction to the payor; (C) the payor and payee spouses are not members of the same household at the time the payments are made if they are legally separated; and (D) the payments or substitutes end after the payee spouse's death. These requirements provide an objective standard to distinguish payments that are a division of property from payments that are made as spousal support.[11]

---

[10]Secs. 71(a), 215(a).

[11]See Estate of Goldman v. Commissioner, 112 T.C. 317, 322 (1999) ("The committee bill attempts to define alimony in a way that would conform to general notions of what type of payments constitute alimony as distinguished from property settlements and to prevent the deduction of large, one-time lump-sum property settlements." (quoting H.R. Rept. No. 98-432 (Part 2), at 1495 (1984)) (citing Hoover v. Commissioner, 102 F.2d 842, 845 (6th Cir. 1996), aff'g T.C. Memo. 1995-183, aff'd without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000).

**[\*9]** Section 71(b)(1)(A) requires that the payment be "received by (or on behalf of) a spouse under a divorce or separation instrument". Section 71(b)(2) defines a "divorce or separation instrument" as a decree of divorce or a written instrument incident to such a decree, a written separation agreement, or a decree requiring a spouse to make payments for support or maintenance of the other spouse. The record does not support a conclusion that the payment at issue was made pursuant to a divorce or separation instrument.

The record does not contain sufficient evidence to indicate that the bonus agreement is a decree or a written instrument incident to a decree. There is no evidence in the record showing that the bonus agreement ever became an order in the divorce proceeding. Moreover, the bonus agreement is not a written separation agreement. The term "written separation agreement" has been interpreted to require a clear, written statement memorializing the terms of support between the parties and entered into in contemplation of separation status.[12] There is no question that Mr. Mudrich and Lauri entered into a bilateral written agreement; however, that agreement specifically provides for division of

---

[12]See Jacklin v. Commissioner, 79 T.C. 340, 350 (1982) (citing Bogard v. Commissioner, 59 T.C. 97, 101 (1972)); Leventhal v. Commissioner, T.C. Memo. 2000-92, 79 T.C.M. (CCH) 1670, 1675 (2000).

[*10] community property and not support. Thus, the bonus agreement is also not a written separation agreement.

Because the bonus agreement was not a divorce or separation instrument, the payment to Lauri pursuant to the bonus agreement is not alimony.

The facts also make it clear that the payment was not made pursuant to the support order. Mr. Mudrich principally argues that the payment was directed by the support order because that order required him to pay Lauri 31.3% of any income he earns in excess of $12,500 per month. Simple math contradicts this assertion. The payment of the $74,753 to Lauri is wholly consistent with the calculation set forth in the bonus agreement: 50% of the bonus payment after withholding. The amount of the payment to Lauri is not consistent with the formula set forth in the support order.

Moreover, the payment predated the support order. The bonus agreement indicates that Lauri received her portion by May 18, 2007. The superior court entered the support order some time after June 1, 2007, and credited Mr. Mudrich with support payments through June 1, 2007. It is well established that payments made before the existence of a written divorce or separation instrument are not

[*11] deductible as alimony.[13]  Therefore, the payment was not received under the support order.  Because the payment was received before the court entered the support order, Mr. Mudrich failed to show that the payment satisfies section 71(b)(1)(A).

Mr. Mudrich also failed to meet his burden to prove that he and Lauri lived separately, if they were legally separated at the time of the payment, as required by section 71(b)(1)(C).  Mr. Mudrich did not put any evidence into the record as to whether he and Lauri were legally separated or living apart at the time of the payment.

In sum, Mr. Mudrich failed to show that the payment was alimony.  He failed to show that the payment was made under a divorce or settlement agreement and that he and Lauri were living separately if they were legally separated.  He may not deduct the payment.

III.    Section 6651(a)(1) Failure To Timely File

Section 6651(a)(1) imposes an addition to tax for failure to timely file a Federal income tax return unless the taxpayer shows that the failure was due to

---

[13]Ali v. Commissioner, T.C. Memo. 2004-284, 88 T.C.M. (CCH) 622, 623 (2004); see also Gordon v. Commissioner, 70 T.C. 525, 529-530 (1978); Healey v. Commissioner, 54 T.C. 1702, 1705-1706 (1970), aff'd without published opinion, 28 A.F.T.R. 2d (RIA) 71-5217 (4th Cir. 1971).

[*12] reasonable cause and not due to willful neglect.[14] The Commissioner bears the burden of production for this addition to tax before the burden shifts to taxpayers to prove that it should not apply.[15] Mr. Mudrich was required to file a timely return for 2007.[16] He stipulated that he did not do so. Thus, the Commissioner has met his burden, and the burden shifts to Mr. Mudrich to establish a defense. But he does not raise any defense or address this issue in his brief. We deem this issue abandoned.[17]

IV.    Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax that is due to any negligence or disregard of rules or regulations or a substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, and the term "disregard" includes any careless, reckless, or intentional disregard.[18] Negligence has been further defined

---

[14]Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

[15]See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447.

[16]Sec. 6012(a)(1).

[17]Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003).

[18]Sec. 6662(c).

[*13] as a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances."[19]  Additionally, a taxpayer is negligent if he fails to maintain sufficient records to substantiate the items in question.[20]  An understatement of income tax is "substantial" when it exceeds the greater of 10% of the tax required to be shown on the return or $5,000.[21]  The Commissioner bears the burden of production for this penalty before the burden shifts to taxpayers to prove that the penalty should not apply.[22]

A return position that does not have a reasonable basis is attributable to negligence.[23]  Whether a position satisfies the reasonable basis standard depends on the extent to which it is supported by authorities of the type relevant to

---

[19]Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g in part, remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299).

[20]See Higbee v. Commissioner, 116 T.C. at 449; sec. 1.6662-3(b)(1), Income Tax Regs.

[21]Sec. 6662(d)(1)(A).

[22]See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447.

[23]See Smith v. Commissioner, T.C. Memo. 2006-51, 91 T.C.M. (CCH) 909, 911 (2006) (citing Van Camp & Bennion v. United States, 251 F.3d 862, 866 (9th Cir. 2001)); sec. 1.6662-3(b)(1), (3), Income Tax Regs.

[*14] determining substantial authority.[24] Reasonable basis is a relatively high standard of tax reporting and is not satisfied by a return position that is merely arguable or that is merely a colorable claim.[25] Mr. Mudrich did not cite any authority for his position that he may deduct the payment of one-half of his bonus to Lauri. Thus, Mr. Mudrich did not have a reasonable basis, and his return position with respect to the portion of the alimony deduction attributable to the bonus payment was due to negligence.

The Commissioner established that the remaining $30,755 of the disallowed alimony deduction was attributable to negligence. Mr. Mudrich did not provide any records to show that he was entitled to that deduction, and he conceded that he was not entitled to the alimony deduction for the remainder. Thus, the Commissioner met his burden of production with respect to the remaining $30,755.

The Commissioner may have also met his burden regarding a substantial understatement of income tax. In accordance with this opinion and the stipulation allowing a portion of the alimony deduction, Mr. Mudrich's exact underpayment

---

[24]See sec. 1.6662-3(b)(3), Income Tax Regs. (cross-referencing sec. 1.6662-4(d)(3)(iii), Income Tax Regs.).

[25]Smith v. Commissioner, 91 T.C.M. (CCH) at 911 (quoting sec. 1.6662-3(b)(3), Income Tax Regs.).

**[\*15]** for 2007 depends on the Rule 155 computations. If these computations establish a substantial understatement of income tax for 2007, the Commissioner will have met his burden of production.[26]

Thus, the burden shifts to Mr. Mudrich to prove he had reasonable cause and acted in good faith.[27] Mr. Mudrich argues that he relied on legal counsel. Taxpayers may establish that they had reasonable cause and acted in good faith through reliance on the advice of a tax professional.[28] But other than a bare allegation, Mr. Mudrich did not provide any evidence that he relied on a tax professional. Thus, he is liable for a section 6662(a) accuracy-related penalty.

## V.    Conclusion

Mr. Mudrich may not deduct the payment as alimony. He failed to meet his burden of proving that the payment was alimony because he failed to show that it was made under a divorce or separation instrument or that he and Lauri were living separately if they were legally separated. The Commissioner met his burden

---

[26]See Olagunju v. Commissioner, T.C. Memo. 2012-119, 103 T.C.M. (CCH) 1653, 1662 (2012); Jarman v. Commissioner, T.C. Memo. 2010-285, 100 T.C.M. (CCH) 599, 602 (2010).

[27]Sec. 6664(c)(1).

[28]Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); sec. 1.6664-4(c), Income Tax Regs.

**[\*16]** of proving that Mr. Mudrich failed to file his 2007 return, and Mr. Mudrich concedes that he did not timely file his return. Thus, he is liable for an addition to tax for failure to timely file. Moreover, Mr. Mudrich's position with respect to the portion of the alimony deduction attributable to the bonus payment was due to negligence. Likewise, the Commissioner established that Mr. Mudrich was negligent with respect to the $30,755 remainder. Mr. Mudrich did not establish that he had reasonable cause and acted in good faith. Thus, he is liable for the accuracy-related penalty.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.