T.C. Memo. 2012-119

UNITED STATES TAX COURT

DAVID A. OLAGUNJU AND VICTORIA A. OLAGUNJU, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6073-10.                    Filed April 23, 2012.

David A. Olagunju and Victoria A. Olagunju, pro sese.

Kristin H. Joe, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined deficiencies in petitioners'

Federal income taxes and accuracy-related penalties as follows under section

6662(a):[1]

---

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

|       |            | Penalty     |
| Year  | Deficiency | Sec. 6662(a) |
|-------|------------|-------------|
| 2006  | $53,672    | $10,734     |
| 2007  | 47,894     | 9,579       |
| 2008  | 32,533     | 6,507       |

After concessions, the issues for decision are: (1) whether petitioners had unreported income during the years at issue; (2) whether petitioners are entitled to various deductions claimed on Schedules C for 2006-08; (3) whether petitioners are entitled to a moving expense deduction of $8,600 for 2008; (4) whether petitioners are entitled to charitable contribution deductions for 2006-08; (5) whether petitioners are entitled to deduct other unreimbursed employee expenses for 2006-08; and (6) whether petitioners are liable for the accuracy-related penalties under section 6662(a).[2]

---

[1](...continued)
Code (Code) in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts have been rounded to the nearest dollar.

[2]Respondent concedes that petitioners are entitled to moving expense deductions of $23,134 and $14,593 for 2006 and 2007, respectively. Respondent concedes that petitioners are entitled to a charitable contribution deduction of $2,435 for 2006 in addition to what he had allowed in the notice of deficiency and charitable contribution deductions of $12,392 and $9,418 for 2007 and 2008, respectively. The remaining charitable contribution deductions ($24,020, $16,308, and $5,458 for 2006, 2007, and 2008, respectively) are at issue.

(continued...)

## FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulation of facts into our findings by this reference. Petitioners resided in the State of Washington when the petition was filed.

---

[2](...continued)

With respect to 2006 respondent concedes that petitioners may deduct (1) $3,300 of advertising expenses and $4,652 of supplies expenses for Epharm Consulting (consulting business) (both amounts exceed the deductions claimed on the return); (2) a $265 miscellaneous expense, although petitioners did not claim that deduction on the 2006 Schedule C, Profit or Loss From Business, for the consulting business; and (3) $2,160 of office expenses for the Big Mall of Africa (Big Mall) business, with a portion of that deduction, $600, remaining at issue.

With respect to the 2007 Schedule C for the consulting business, respondent concedes the following deductions: (1) supplies expenses of $1,788, with the remaining amount, $612, still at issue; and (2) office expenses of $2,062 (petitioners did not claim an office expense deduction on the return).

With respect to 2008 respondent concedes that petitioners are entitled to deductions for (1) supplies expenses of $3,899 for the consulting business, with the remaining amount, $412, still at issue; (2) other expense of $59 for the consulting business, although petitioners did not claim it on the return; and (3) supplies expenses of $3,899 for Epharm Staffing & Training (staffing business), although petitioners did not claim a deduction for these expenses on the return.

Petitioners concede the $84 adjustment to dividend income and a $9,023 adjustment to capital gain, which were in their favor. Lastly, various adjustments in the notice of deficiency are computational.

Petitioner husband David A. Olagunju studied computer science and statistics in Nigeria and the United States and holds a master's degree. His professional background is in the field of clinical trial development.

This case concerns Mr. Olagunju's four businesses. Mr. Olagunju's first business, the consulting business, involved consulting work in the pharmaceutical industry. Petitioners reported items related to this business on Schedules C for 2006-08 as follows:

| Year | Gross income | Deductions | Net profit (loss) |
|------|------|------|------|
| 2006 | $7,340 | $25,690 | ($18,350) |
| 2007 | 3,400 | 22,306 | (18,906) |
| 2008 | 3,500 | 26,057 | (22,557) |

Mr. Olagunju's second business was Ola Textil Mills (Ola Textil or the textile business), a family run business in Nigeria. Ola Textil purchased wholesale cotton, wheat material, dye, and readymade material for resale. Mr. Olagunju was an investor, and during the years at issue, he provided funding to this business. Because the local economy was largely cash based, he withdrew cash from his bank account in the United States and either delivered it to the business when he traveled to Nigeria one to three times every year or asked a friend to deliver cash.

Ola Textil maintained two offices and a warehouse and employed temporary workers. It prepared financial statements for Mr. Olagunju's review and gave him

what purported to be receipts for expenses.  Petitioners' Schedules C reported the following items for Ola Textil:

| Year | Gross income | Returns and allowances | Cost of goods sold | Expenses | Net profit (loss) |
|------|------|------|------|------|------|
| 2006 | $28,130 | $3,400 | $37,300 | $22,083 | ($34,653) |
| 2007 | 31,023 | 4,536 | 68,300 | 21,469 | (63,282) |
| 2008 | 6,500 | 1,100 | 12,000 | 11,021 | (10,052) |

In 2006-07 Mr. Olagunju's third business was Big Mall, which operated an online Web site through which he sold items imported from Kenya and Nigeria.  He stored inventory for Big Mall in his garage.  Petitioners reported items related to this business as follows:

| Year | Gross income | Returns and allowances | Expenses | Net profit (loss) |
|------|------|------|------|------|
| 2006 | $3,400 | $450 | $20,284 | ($17,334) |
| 2007 | -0- | -0- | 4,696 | (4,696) |

For 2007 and 2008 petitioners also reported a fourth business, the staffing business, which was an online temporary staffing agency.  Petitioners reported income and expenses for this business as follows:

| Year | Gross income | Expenses | Net profit (loss) |
|------|------|------|------|
| 2007 | -0- | $20,872 | ($20,872) |
| 2008 | $4,100 | 9,741 | (5,641) |

Respondent disallowed all Schedule C deductions, except (1) a repairs and maintenance expense deduction of $2,470 reported on the 2007 Schedule C for the textile business and (2) a car and truck expense deduction of $7,775 reported on the Schedule C for the staffing business.[3] In addition, respondent adjusted other items. First, for each year at issue petitioners claimed a moving expense, and the 2008 moving expense of $8,600 remains at issue. Second, for each year at issue petitioners claimed charitable contribution deductions and unreimbursed employee expenses deductions. All unreimbursed employee expenses deductions and a part of the charitable contribution deduction for each year remain at issue. Third, in 2008 Mr. Olagunju received a $35,677 distribution from his individual retirement account (IRA) which he treated as a nontaxable distribution. Respondent increased petitioners' income by the amount of the IRA distribution. Fourth, respondent increased petitioners' interest income by $159, $357, and $102 for 2006, 2007, and 2008, respectively. Fifth, respondent adjusted petitioners' qualified dividends, and $152 and $734 for 2006 and 2008, respectively, remain at issue.

---

[3]Respondent states that he allowed these deductions inadvertently but does not assert an increased deficiency.

OPINION

I.      Burden of Proof

The Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deduction. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

In addition to disallowing various deductions in the notice of deficiency, respondent also increased petitioners' income for unreported dividend income, interest income, and a distribution from the IRA. The U.S. Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie absent a stipulation to the contrary, see sec. 7482(b)(1)(A), has held that for the presumption of correctness to attach to the notice of deficiency in unreported income cases, the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity, see Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), rev'g 67 T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported income, Edwards v. Commissioner, 680 F.2d 1268, 1270-1271 (9th Cir. 1982). If the Commissioner introduces some evidence that the

taxpayer received unreported income, the burden shifts to the taxpayer, who must establish by a preponderance of the evidence that the unreported income adjustment was arbitrary or erroneous. See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.

The record contains a jointly stipulated Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., showing a taxable distribution of $35,677 to Mr. Olagunju. Because respondent has introduced evidence that petitioner received an IRA distribution, the burden of proof with respect to this adjustment is on petitioners.

With respect to the determinations of interest income and dividends, respondent failed to introduce into evidence third-party reporting documentation, the transcripts of petitioners' tax accounts, or other credible evidence showing that petitioners received dividends and interest income in excess of what they reported. Accordingly, respondent failed to carry his burden of production with respect to the adjustments to interest income and dividends.

Petitioners do not contend that section 7491(a) shifts the burden of proof to respondent, and the record does not permit us to conclude that the requirements of section 7491(a) are met. In sum, petitioners bear the burden of proof and the burden

of production with respect to all adjustments at issue, except the adjustments to interest income and dividends.

## II.     Adjustments to Income

Respondent adjusted dividends for 2006 and 2008 and interest income for each year at issue.  As discussed above, respondent bears the burden of production with respect to these adjustments, but failed to carry it.  Accordingly, we do not sustain the adjustments to interest income and dividends for the relevant years.

Respondent also increased petitioners' taxable IRA distribution income by $35,677 for 2008.[4]  Petitioners contend that the distribution is not taxable because it was a business loan, that they repaid it, and that they substantiated repayments by checks, which are in the record.

Section 402(a) provides that distributions from a qualified plan are taxable to the distributee in the year in which the distribution occurs.  Under the general rule of section 72(p)(1)(A), if a participant receives a loan from a qualified plan, the loan is a taxable distribution in the year received.  However, a loan is not a taxable distribution if it meets three requirements:  (1) the principal amount of the loan does not exceed the statutorily specified amount; (2) the loan is repayable within five

---

[4]The parties refer to Mr. Olagunju's plan as an IRA, and respondent does not contend that the loan was a prohibited transaction.  We address this adjustment on the grounds raised by the parties.

years; and (3) the loan requires substantially level amortization over the loan term. Sec. 72(p)(2). In addition, the loan must be evidenced by a legally enforceable agreement. See sec. 1.72(p)-1, Q&A-3, Income Tax Regs.

The record contains a Form 1099-R issued by Fidelity Investments that shows a taxable distribution of $35,677 to Mr. Olagunju. The record also contains nine canceled checks written by Mr. Olagunju to Fidelity Investments in 2007, each for $574. The record, however, contains no loan documents or other documentary evidence showing that the distribution was evidenced by a legally enforceable agreement, as required by the regulations. Because petitioners failed to establish that the requirements of section 72(p)(2) have been met, they must include the distribution in gross income.

III.    Adjustments to the Schedules A, Itemized Deductions

A.    Unreimbursed Employee Expenses

Petitioners claimed, and respondent disallowed, unreimbursed employee expenses of $17,736,[5] $2,110, and $13,090 for 2006, 2007, and 2008, respectively.

---

[5]The notice of deficiency shows that the amount of the unreimbursed employee expense deduction petitioners claimed on the 2006 return was $17,736 and that respondent disallowed it in full. However, the amount of unreimbursed employee expenses claimed on the 2006 return totals $21,990. We interpret the inconsistency as respondent's partial allowance of the deduction.

Generally, a taxpayer who is an employee may deduct unreimbursed employee expenses as an ordinary and necessary business expense under section 162. Lucas v. Commissioner, 79 T.C. 1, 6 (1982). An employee, however, cannot deduct such expenses to the extent that the employee is entitled to reimbursement from his employer. Id. at 7. In addition, section 6001 requires a taxpayer to maintain sufficient records to allow the determination of the taxpayer's correct tax liability. Two Forms 2106, Employee Business Expenses, attached to petitioners' 2006 and 2008 returns, show that petitioners deducted vehicle expenses, parking fees, and travel expenses.[6] Petitioners did not introduce any credible evidence to substantiate these expenses, nor did they explain their business purposes. Accordingly, we sustain respondent's adjustments to unreimbursed employee expenses.

B.    Charitable Contributions

Respondent disallowed charitable contribution deductions of $26,455, $28,700, and $14,876 for 2006, 2007, and 2008, respectively. After respondent's concessions, see supra note 2, a portion of the deduction for each year remains at issue.

---

[6]The 2007 return in the record does not contain a Form 2106.

Generally, section 170(a) allows a deduction for any "charitable contribution" made by the taxpayer. Charitable contribution deductions are subject to the recordkeeping requirements of section 1.170A-13(a), Income Tax Regs., for contributions of money, or section 1.170-13(b), Income Tax Regs., for contributions of property other than money. Any contribution of $250 or more also must satisfy the requirement of section 1.170A-13(f)(1), Income Tax Regs., which provides that to claim a charitable contribution deduction of $250 or more, the taxpayer must substantiate the contribution with a contemporaneous written acknowledgment from the donee organization.[7] Sec. 170(f)(8)(A); sec. 1.170A-13(f)(1), Income Tax Regs. If a taxpayer makes a charitable contribution of property other than money in excess of $500, the taxpayer must maintain written records showing the manner of acquisition of the item and approximate date of the acquisition. See sec. 1.170A-13(b)(3), Income Tax Regs.

The record contains several documents that petitioners offered to substantiate the remaining charitable contribution deductions. However, these documents (1)

---

[7]Separate contributions of less than $250 are not subject to the requirements of sec. 170(f)(8), regardless of whether the contributions made by a taxpayer to a donee organization during a taxable year total $250 or more. Sec. 1.170A-13(f)(1), Income Tax Regs.

substantiate deductions that respondent has conceded;[8] (2) fail the contemporaneous written acknowledgment requirement for contributions exceeding $250; (3) appear to be documentation for expenses that are not charitable contributions, such as confirmations of payments of taxes and mortgage statements and payments to Seattle Pacific University, Northwest University, and Santa Clara University that appear to be payments for tuition, room, and board; (4) constitute general fundraising correspondence and refer to petitioners' charitable contributions but fail to state the amounts of the contributions; or (5) fail the substantiation requirements for nonmonetary contributions in excess of $500, in that the documents do not show the dates of the acquisition of the items of property.[9]  Accordingly, we sustain respondent's determinations regarding the remaining charitable contribution deductions.

---

[8]We refer to a $200 check to Renovation House and all checks written to City Church.

[9]We refer to a receipt for $600 dated October 12, 2008, issued by the Mercer County Library for a contribution of books and receipts for contributions of household items to Goodwill and Everett Gospel Mission.

IV.    Adjustments to the Schedules C

A.    In General

Section 162(a) permits a taxpayer to deduct the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. See Commissioner v. Lincoln Sav. & Loan Ass'n, 403 U.S. 345, 352 (1971). A trade or business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry, and it is necessary if it is appropriate and helpful for the development of the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Section 262(a) disallows deductions for personal, living, or family expenses. See also sec. 1.162-17(a), Income Tax Regs.

Generally, the taxpayer must maintain adequate records to substantiate the amounts of his income and entitlement to any deductions or credits claimed. Sec. 6001; INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; sec. 1.6001-1(a), Income Tax Regs. When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the expense, we may estimate the amount allowable in some circumstances (the Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). There must be sufficient evidence in the record, however, to permit us to conclude that the taxpayer paid or

incurred a deductible expense in at least the amount allowed. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). In estimating the amount allowable, we bear heavily upon the taxpayer who failed to maintain required records and to substantiate deductions as the Code requires. See Cohan v. Commissioner, 39 F.2d at 544.

For certain kinds of business expenses, section 274(d) overrides the Cohan rule. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969). Under section 274(d), a taxpayer must satisfy strict substantiation requirements before a deduction is allowable. These strict substantiation requirements of section 274(d) apply to any traveling expense, including meals and lodging away from home, any item with respect to an activity in the nature of entertainment, or the use of listed property, as defined in section 280F(d)(4), including passenger automobiles.

To deduct these expenses, the taxpayer must "substantiate[ ] by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) the amount of the expense or other item; (2) the time and place of travel, entertainment, or use of the property; (3) the business purpose of the expense or other item; and (4) the business relationship of the taxpayer to the persons entertained. Sec. 274(d). To satisfy the requirements of section 274(d), a taxpayer

must maintain records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use. Sec. 1.274-5T(c)(1) and (2), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985). Although a contemporaneous log is not required, corroborative evidence created at or near the time of the expenditure to support a taxpayer's reconstruction "of the elements * * * of the expenditure or use must have a high degree of probative value to elevate such statement" to the level of credibility of a contemporaneous record. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.

B.    Deductions for Car and Truck Expenses

Respondent disallowed deductions for car and truck expenses that petitioners claimed on the 2006-08 Schedules C for the consulting business (totaling $18,645) and on the 2006 Schedules C for the textile business ($7,569) and Big Mall ($5,109). Petitioners did not claim deductions for car and truck expenses for 2007 and 2008 for the textile business but have introduced documentation into evidence in an effort to substantiate them.

Generally, passenger automobiles and any other property used as a means of transportation are listed property, see sec. 280F(d)(4)(A)(i) and (ii), and these expenses are subject to the strict substantiation requirements of section 274(d). Petitioners introduced into evidence various receipts but acknowledge that they did

not maintain logs for the use of the vehicles. Petitioners failed to establish the business use of the vehicles, and we sustain respondent's determination denying all deductions for car and truck expenses.

### C. Meals and Entertainment Expenses

Petitioners deducted meals and entertainment expenses for 2006-08 for the consulting business (totaling $3,850), for 2006-08 for the textile business (totaling $3,062) and for 2006 for Big Mall ($635). Although the record contains receipts for most expenses, petitioners introduced no credible evidence to establish the business purpose of each expense, as required by section 274(d). We sustain respondent's determination.

### D. Travel Expenses

Petitioners deducted travel expenses on the 2006-08 Schedules C for the consulting business (totaling $23,415), the 2006-08 Schedules C for the textile business (totaling $15,990), and the 2006 Schedule C for Big Mall ($750). The record contains receipts for airline tickets, rental cars, and parking. Most expenses relate to petitioners'[10] travel to Nigeria and to and from Washington and New Jersey. Mr. Olagunju testified he traveled to Nigeria up to three times per year for the textile business as well as to visit with his family one or two hours daily while

---

[10]Petitioners also deducted their daughters' travel expenses.

in Nigeria. Mr. Olagunju did not keep a travel log. Mr. Olagunju's broad testimony that he traveled to Nigeria to tend to the textile business matters is insufficient to establish the business purpose of each trip as required by section 274(d).

With respect to travel for the consulting and Big Mall businesses, the record contains various receipts for travel between Washington and New Jersey. Mr. Olagunju testified that at the time both petitioners worked in New Jersey as consultants for Novartis and that they owned a townhome in New Jersey and a home in Washington. According to petitioner, when he came to Seattle, he took care of Big Mall and when he traveled to New Jersey, he worked as a consultant.

We are not convinced that petitioners' expenses for travel between their homes in New Jersey and Washington were anything but personal expenses of maintaining two households. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). In addition, such broad testimony is insufficient to establish the business purpose of each trip, as required by section 274(d). We sustain respondent's determination with respect to travel expenses

### E. Utilities

Petitioners deducted utilities expenses on their 2006-08 Schedules C for the consulting business (totaling $6,195), the 2006-08 Schedules C for the textile

business (totaling $4,400), and the 2006 Schedule C for Big Mall ($3,650). They claim that they paid these expenses to maintain a home office for operating the businesses.

Generally, expenses of maintaining a household, including amounts paid for water, utilities, and similar expenses, are not deductible. Sec. 1.262-1(b)(3), Income Tax Regs. However, subject to the rules of section 280A, if a part of the home is used as a place of business, a corresponding portion of the expenses, as is properly attributable to such place of business, is deductible as a business expense. Id. Taxpayers must provide the Court with a basis to determine what portion of the utilities was allocable to their business. See, e.g., Adler v. Commissioner, T.C. Memo. 2010-47, aff'd, 443 Fed. Appx. 736 (3d Cir. 2011).

Petitioners introduced no credible evidence to substantiate utilities expenses for the consulting business for 2006 or for the textile business for 2007, and we disallow the corresponding deductions. To substantiate other deductions, petitioners introduced into evidence canceled checks, bills, and other documents, including foreign documents (for the textile business). Mr. Olagunju testified that "the whole basement was also devoted to that" business. Such general testimony does not provide a basis for allocating the utilities expenses between the business

use and personal use of a home.[11]  Accordingly, we sustain respondent's determination.

### F.    Legal and Professional Services

Petitioners claimed deductions for legal and professional services expenses on their 2006-07 Schedules C for the consulting business (totaling $1,850), the 2006 Schedule C for the textile business ($360), and the 2006 Schedule C for Big Mall ($750).  Although petitioners did not claim legal and professional expense deductions for 2007-08 for the textile business or for 2008 for the consulting business, they submitted documentation to substantiate them.

Petitioners provided no substantiation for legal and professional services expenses for the consulting business for 2006 and 2007, nor did they provide a basis for estimating them under the Cohan rule.  To substantiate the legal and professional services expenses for the consulting business for 2008, petitioner submitted several checks written to the City of Mill Creek, River Crossing HOA, Consumer Reports, AARP, and the Snohomish County auditor.  We do not see how these payments relate to petitioners' business.  Therefore, petitioners may not deduct legal and professional expenses for the consulting business for 2006-08.

---

[11]Mr. Olagunju testified that TurboTax, which he used to prepare the returns, had a formula for calculating the deductible portion of the utilities expenses.

For the textile business, petitioners presented payment invoices issued by a Nigerian firm to Ola Textil.  The payment invoices are handwritten and bear the handwritten notation "paid in cash".  The amounts are written in local currency with a handwritten notation showing the exchange rate and the U.S. dollar equivalent.[12] The payment invoices describe services rendered as "legal consulting", "business name renewal", and "Legal letters to clients", etc.  We do not find the documents credible or sufficient, even if credible, to substantiate the expenses.  Petitioners introduced no credible evidence that would have shown that they paid the amounts shown on the invoices, nor were the payment invoices accompanied by third-party testimony.  We disallow the deductions for legal and professional services expenses that petitioners claimed on the Schedules C for the textile business.  See, e.g., Lam v. Commissioner, T.C. Memo. 2006-265.

For the legal and professional services expenses for Big Mall for 2006, petitioners presented a receipt issued to Ola Textil for $925 by a Nigerian firm. Nothing on the receipt indicates that the expense relates to Big Mall and that it was not a personal expense.  We disallow this deduction.

---

[12]For 2007 petitioners' conversion calculations appear incorrect.

G.    Depreciation and Section 179 Expenses

Petitioners claimed depreciation and section 179 deductions on the 2006-08 Schedules C for the consulting business (totaling $1,317), the 2006-08 Schedules C for the textile business (totaling $6,522), on the 2006-07 Schedules C for Big Mall (totaling $7,256), and on the 2007-08 Schedules C for the staffing business (totaling $22,838).  Respondent disallowed these deductions in full.  Petitioners introduced no credible evidence to substantiate these deductions claimed on the 2006 Schedule C for Big Mall and the 2007 Schedules C for the textile and staffing businesses.  Accordingly, we disallow those deductions.

For depreciation expenses for the consulting and textile businesses for 2006, the record shows that petitioners depreciated computers.  However, respondent has allowed petitioners to deduct the cost of those computers as part of the supplies expense deduction.  Accordingly, we disallow these depreciation deductions.

With respect to the remaining deductions in this category, the record contains the depreciation schedules but no credible evidence of the costs of the assets.  In addition, some deductions relate to vehicles, which are listed property, and petitioners failed to satisfy the section 274(d) strict substantiation requirements.  We sustain respondent's determination with respect to depreciation and section 179 expenses.

H.     Rent or Lease

Petitioners claimed a deduction of $2,400 for a rent or lease expense on the 2006 Schedule C for the consulting business.  They provided neither documentary evidence to substantiate these expenses nor a basis for estimating them.  Therefore, we sustain respondent's disallowance of this deduction.

Petitioners did not claim a rent expense deduction on their 2008 Schedule C for the textile business but introduced into evidence cash receipts for "land leased to the company".  We question the credibility and authenticity of petitioners' cash receipts because we find the handwriting on them matches the handwriting on some other receipts issued by different vendors, for example:  (1) receipt No. 2069 that is intended to substantiate travel expenses for the textile business, (2) receipt Nos. 000777 and 000428 that are intended to substantiate supplies expenses for the textile business for 2008, and (3) receipt No. 1243 intended to substantiate advertising expenses for the textile business for 2007.[13]  In addition, petitioners do not explain the business purpose of the expenses, nor do they corroborate the expense by a lease agreement or third-party testimony.  We disallow this deduction.

---

[13]Questioning the authenticity of petitioners' cash receipts, respondent also points to the same format of all cash receipts of various Nigerian vendors in the record.

I.      Repairs and Maintenance

Respondent disallowed deductions for repairs and maintenance that petitioners claimed on the 2007-08 Schedules C for the consulting business (totaling $4,350) and the 2006 Schedule C for Big Mall ($760). Petitioners provided no documentary evidence to substantiate these expenses, nor did they provide a basis for estimating them. We disallow those deductions.

Petitioners did not claim repairs and maintenance expense deductions on the 2006 and 2008 Schedules C for the textile business,[14] but they introduced into evidence receipts issued in Nigeria to Ola Textil. For 2006 only the receipt issued by M.C. Plumbing Works dated October 13, 2006, for $703 explains that the expense related to plumbing repairs. We allow petitioners to deduct this expense. For 2008 petitioners presented only uncorroborated invoices with notations "paid in cash" and no credible evidence of payment. We therefore disallow this deduction for 2008.

---

[14]Petitioners claimed a $2,470 expense deduction for repairs and maintenance on the 2007 Schedule C for the textile business, but respondent allowed it. Respondent states he did so mistakenly, but does not assert an increased deficiency.

J.      Taxes and Licenses

Petitioners claimed deductions for taxes and licenses on the 2006 and 2007 Schedules C for the consulting business (totaling $960) and the 2006 Schedule C for Big Mall ($560). Petitioners also introduced documentation to substantiate taxes and licenses expenses for 2006 for the textile business.

Mr. Olagunju testified that the 2006 expense for the consulting business related to licensing software for their Web site, but the record contains no credible evidence for estimating the amount of the expense. The record contains no evidence regarding the 2007 expense for the consulting business. We disallow these deductions.

To substantiate the taxes and licenses expense for Big Mall for 2006, petitioners rely on a $1,438 check written to the State of New Jersey. Petitioner testified that probably they paid the expense for license plate renewal for a vehicle used for the Big Mall matters. We disallow any car-related expenses because of the lack of compliance with substantiation requirements for listed property.

With respect to the 2006 expense for the textile business, petitioners introduced into evidence an invoice issued to Mr. Olagunju for "Mall of Africa, local name search and business registration". The invoice bears a handwritten notation "Paid in cash". In the absence of corroborating credible evidence that

petitioners paid the expense, that notation is insufficient to establish that they paid the invoice, and we disallow this deduction.

### K. Supplies

Respondent disallowed petitioners' deductions for supplies claimed on the 2006-08 Schedules C for the consulting business (totaling $8,521), the 2008 Schedule C for the textile business ($3,200), and the 2006 Schedule C for Big Mall ($1,400). Petitioners did not claim a supplies expense deduction on the 2007 Schedule C for the textile business or the 2008 Schedule C for the staffing business but now attempt to substantiate those expenses. After respondent's concessions, the following expenses remain at issue: 2007-08 for the consulting business (in part), 2007-08 for the textile business (in full), 2006 for Big Mall (in full), and 2008 for the staffing business (in part). We address these expenses below.

#### 1. The Consulting Business

For 2007 other than the confirmation of the purchase of a computer that respondent allowed, the record contains a bank statement showing a payment of $3,343 to a furniture store and a price quotation for various items from the same store. We disallow this deduction because petitioners failed to establish that this was not a personal expense. See sec. 262(a).

For 2008 respondent conceded many of petitioners' expenses.[15] To substantiate the remaining amount, petitioners introduced into the record documentary evidence showing that they paid for lamps, FedEx, postal service, gas, an iPod, a Nikon camera, and a generator and made payments to Ryan Moline, Tarum Raghav, Costco, Barnes & Noble, T-Mobile, and to what appears to be an online furniture store. The amounts in many of these documents are illegible, and some receipts are duplicates or pertain to a different year. Petitioners do not explain the business purpose of any of these payments, and we disallow a deduction for these expenses.[16]

### 2. The Textile Business

The record establishes that Ola Textil purchased an automatic voltage regulator, and we allow petitioners to deduct this expense. We disallow deductions for the remaining amounts because (1) the documentation is illegible; (2) invoices

---

[15]Petitioners presented the same documents to substantiate the supplies expense for the staffing business for 2008, although they did not report them on the Schedule C. Respondent conceded that some of those expenses were deductible and split them between the consulting and staffing businesses equally ($3,899 in supplies expenses for each business).

[16]For the same reasons, petitioners may not deduct these expenses as part of their supplies expense for the staffing business for 2008.

are not accompanied by receipts; (3) the description of the purchased items is unclear; or (4) the business purpose of the purchase is unclear.

### 3. Big Mall

Petitioners submitted canceled checks written to Cablevision and to Verizon Wireless. The record does not explain why cable service was necessary for the business or identify who used the cell phone.[17] We disallow this deduction.

### 4. The Staffing Business

Respondent conceded $3,899 of this deduction. See supra note 15. As discussed above, see supra pp. 26-28, petitioners did not establish a business purpose for any of the payments, and we disallow this deduction to the extent not already conceded by respondent.

### L. Office Expenses

Respondent disallowed all office expenses that petitioners claimed on their 2006-07 Schedules C for the textile business (totaling $1,800) and the 2006 Schedule C for Big Mall ($2,760).

With respect to the office expenses for the textile business for 2006, petitioners presented several receipts issued in Nigeria for mailing documents. The

---

[17]In addition, during the years at issue cell phones were listed property subject to the strict substantiation requirements of sec. 274(d). See sec. 280F(d)(4)(A)(v).

record does not establish that those expenses were business related, and we disallow a deduction for them. Other documents petitioners rely on are invoices and not receipts. In the absence of credible evidence establishing that petitioners paid those expenses, we disallow the deduction.

To substantiate the office expenses claimed on the 2007 Schedule C for the textile business, petitioners submitted:

- A confirmation of purchasing a media center for $1,550 from HP Home Store, but respondent allowed this expense as part of an office expense deduction for the consulting business.

- A confirmation of purchasing a calling card. We shall disallow the expense of a calling card because petitioners failed to establish its business purpose.

- A receipt for the purchase of a $1,818 notebook. We question the authenticity of this receipt because petitioners introduced an identical receipt (except for the date) to substantiate the 2006 expenses, which respondent allowed.

- Invoices Nos. 0093, 155, and 224, which are duplicates of what petitioners submitted to substantiate supplies expense discussed above.

- Other documents bear a handwritten notation "paid in cash", and without corroborating evidence, we reject those invoices as proof of payment.

Accordingly, we sustain respondent's determination with respect to the office expense deduction for the 2007 Schedule C for the textile business.

To substantiate office expenses for Big Mall for 2006 in addition to what respondent concedes, petitioners introduced into evidence a $43 receipt from an unknown vendor and several checks written to Verizon Wireless. Petitioners failed to establish the business purpose of the expenses, and we disallow this deduction.

Petitioners did not claim, but now attempt to substantiate, office expense deductions for 2007 for the consulting business. Respondent partially conceded this deduction. See supra note 2. We shall allow petitioners to deduct a $40 expense for Corel WordPerfect Office X3. Petitioners' remaining expenses were expenses for three-hour photography coverage, calling cards, gas, and purchases at various stores. In the absence of any evidence of the business purpose of each expense, we disallow this deduction.

### M. Miscellaneous Expense

Petitioners did not claim a deduction for this expense on the 2006 Schedule C for the consulting business but have introduced into evidence documentation to substantiate it, and respondent concedes it in part. Petitioners' documentation for the expenses that remain at issue shows payments to Time, Arrowgate at Randolph,

River Crossing HOA, and cleaning businesses.  Petitioners did not establish these expenses were not personal, and therefore these expenses are not deductible.  See sec. 262(a).

N.    Other Expenses

Petitioners claimed a $600 other expense deduction on the 2008 Schedule C for the textile business, and respondent disallowed it in full.  Petitioners introduced no credible evidence to substantiate or estimate this deduction, and we sustain respondent's determination.

Petitioners did not deduct this category of expenses on the 2008 Schedule C for the consulting business, but after petitioners introduced evidence regarding this deduction, respondent concedes it in part.  See supra note 2.  Petitioners' remaining documentation shows payments to the Snohomish County auditor, the City of Mill Creek, River Crossing HOA, Consumer Reports, AARP, and the Seattle Times.  Petitioners did not establish the business purpose of each payment, and these expenses are not deductible.

O.    Miscellaneous Office Expense

Petitioners attempt to substantiate this deduction for the 2006 Schedule C for the consulting business, although they did not claim it on the 2006 return.  Petitioners' receipts show that they paid a bookstore, Consumer Reports, and

Verizon Wireless. Petitioners did not establish the business purpose of each purchase, and these expenses are not deductible.

P.    Advertising Expenses

Of the advertising expenses that petitioners claimed on the returns, only the 2006 expense for Big Mall remains at issue. Petitioners introduced no credible evidence to substantiate it, and we sustain respondent's determination.

Petitioners did not deduct this category of expenses on the 2007 Schedule C for the textile business but introduced into evidence three receipts. Two of those receipts were issued by an "Art and Publicity" company in Nigeria. The receipts establish that petitioners paid $74 and $38 for advertising materials,[18] and we allow petitioners to deduct these expenses.

We do not find petitioners' receipt No. 1243 dated July 11, 2007, to be credible. The handwriting on this receipt matches the handwriting on several other receipts issued by different vendors, see supra p. 23, and we disallow a deduction for this expense.

_____

[18]These receipts, as well as other Nigerian documentation in the record, show the amounts in local currency. Each receipt bears a handwritten notation, presumably petitioners', of the applicable exchange rate and the U.S. dollar equivalent of the amount. For the deductions that we allow herein that are substantiated by foreign receipts, the parties shall verify the applicable exchange rate as part of their Rule 155 computations.

Q.    Returns and Allowances

Petitioners deducted, and respondent disallowed in full, returns and allowances for the 2006-08 Schedules C for the textile business (totaling $9,036) and the 2006 Schedule C for Big Mall ($450).  The record contains no documentation regarding these deductions.  Mr. Olagunju testified at trial that for the textile business, the local manager estimated the cost of damaged cotton and sold materials for which Ola Textil was not paid by a customer.  No one from Ola Textil testified, and Mr. Olagunju's vague testimony is insufficient to establish the amount of the deduction.  We sustain respondent's determination disallowing the returns and allowances deductions.

R.    Wages

Petitioners reported wage expenses of $1,900 and $6,700 on the 2006 and 2007 Schedules C for the textile business, respectively.  Respondent disallowed them in full.  Mr. Olagunju testified that Ola Textil had temporary workers.  To substantiate wages paid, petitioners presented contemporaneous records that show employee names and the amount for every month in local currency.  Each employee signed the corresponding line attesting to the receipt of the payment.  Each sheet bears a stamp "For Treasury use only" and is signed in the bottom by the company

cashier. We find petitioners' evidence credible and allow petitioners to deduct wages expenses on the Schedules C for the textile business for 2006-07.

S.      Cost of Goods Sold

For the textile business, petitioners reported cost of goods sold of $37,300, $68,300, and $12,000 for 2006, 2007, and 2008, respectively. To substantiate cost of goods sold, petitioners introduced into evidence beginning and ending inventory lists prepared by an Ola Textil employee and invoices for materials purchased during each year. We question the correctness of the inventory lists: The 2006 ending inventory does not match the 2007 beginning inventory, and the 2007 ending inventory does not match the 2008 beginning inventory. In addition, petitioners did not establish by credible evidence that they paid the invoices for the purchases of materials. We sustain respondent's determination disallowing petitioners' claimed cost of goods sold.

V.      Other Adjustments

On their 2008 return petitioners deducted moving expenses of $8,600. Petitioners make no argument why they are entitled to the deduction, but they introduced into evidence (1) a Uniform Household Goods Bill of Lading and Freight Bill issued by A Security Moving & Storage, Inc.; (2) an estimate from a moving company; and (3) a receipt for $49 from a vendor.

Generally, section 217(a) provides that "[t]here shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work." Petitioners failed to introduce credible evidence that the move was job related.[19] Therefore, we sustain respondent's determination.

## VI. Accuracy-Related Penalty Under Section 6662(a)

Respondent determined that petitioners' underpayment was attributable to (1) negligence or disregard of rules or regulations under section 6662(b)(1); or (2) substantial understatement of income tax under section 6662(b)(2).[20]

Generally, section 6662(a) and (b)(1) authorizes the Commissioner to impose a 20% penalty on the portion of an underpayment of income tax attributable to negligence or disregard of rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal

---

[19]Petitioners do not contend that they incurred expenses in connection with commencement of work as self-employed individuals for the staffing business, which Mr. Olagunju set up between 2007 and 2008.

[20]One attachment to the notice of deficiency lists negligence and substantial understatement of income tax as alternative grounds for the penalty, whereas the Form 886-A, Explanation of Items, lists only the substantial understatement as the ground for the penalty. Because on brief respondent raises both grounds for the accuracy-related penalty, we address the applicability of both grounds.

revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c); sec. 1.6662-3(b)(1) and (2), Income Tax Regs. Disregard of rules or regulations is careless if "the taxpayer does not exercise reasonable diligence to determine the correctness of a return position" and is reckless if "the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe." Sec. 1.6662-3(b)(2), Income Tax Regs.; see also Neely v. Commissioner, 85 T.C. 934, 947 (1985).

Section 6662(a) and (b)(2) also authorizes the Commissioner to impose a 20% penalty if there is a substantial understatement of income tax. An understatement means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). The accuracy-related penalty does not apply with respect to any portion of the underpayment for which the taxpayer shows that there was reasonable cause and that he acted in good faith. Sec. 6664(c)(1).

The Commissioner bears the burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty. See sec. 7491(c). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had reasonable cause or substantial authority for the position. See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

Respondent met his burden of production with respect to negligence. He introduced evidence that petitioners' deductions did not satisfy the standard for deductions under section 162 and that various other adjustments were appropriate.

The exact amounts of petitioners' underpayments will depend on the Rule 155 computations, in accordance with this opinion. If those computations establish that petitioners have substantial understatements of income tax, respondent has also met his burden of production with respect to the substantial understatement ground for the penalty under section 6662(a) and (b)(2).

Petitioners do not argue that they were not negligent or that they had reasonable cause for the underpayments. Petitioners do not explain their failure to keep adequate records and to substantiate items properly. We hold that for each year at issue, petitioners are liable for a section 6662(a) penalty for negligence or,

alternatively, a substantial understatement of income tax, if applicable as the Rule 155 computations will show.[21]

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[21]Only one accuracy-related penalty may apply with respect to any given portion of an underpayment.  Sec. 1.6662-2(c), Income Tax Regs.