T.C. Memo. 2015-95

UNITED STATES TAX COURT

ROBERT I. REDISCH AND PAMELA A. REDISCH, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30011-12.                    Filed May 19, 2015.

Joseph Falcone, for petitioners.

Alicia A. Mazurek and Alexandra E. Nicholaides, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

BUCH, Judge:  Respondent issued a notice of deficiency determining the

following deficiencies and penalties with respect to the Redisches' Federal income

tax for years 2009 and 2010.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the years in issue, and all Rule references are to the

(continued...)

| [*2] Year | Deficiency | Penalty sec. 6662(a) |
|---|---|---|
| 2009 | $77,793 | $15,559 |
| 2010 | 89,155 | 17,831 |

After concessions, the issues remaining for consideration are whether the Redisches converted their secondary residence into a rental property such that they are entitled to certain deductions including an ordinary loss deduction and whether they are liable for accuracy-related penalties under section 6662(a). On the basis of the evidence presented at trial, we hold that the Redisches did not convert their secondary residence into a property held for the production of income and are not entitled to related deductions or an ordinary loss deduction. Further, they are liable for accuracy-related penalties.

FINDINGS OF FACT

Mr. and Mrs. Redisch were married during 2009 and 2010, the years in issue. Mr. Redisch is a veterinary doctor and has been in practice over 40 years.

Hammock Dunes is a private oceanfront community in Palm Coast, Florida. Hammock Dunes has two golf courses, two clubhouses, and a variety of housing

[1](...continued)
Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

[*3] options including condominiums, golf villas, and single-family homes. In 2002 Mr. Redisch rented a golf villa in Hammock Dunes. Mr. Redisch enjoyed his stay at Hammock Dunes and decided to pursue purchasing real estate within the community.

In April 2003 the Redisches purchased a piece of property in Hammock Dunes for $125,000, intending to build a home on the land. When the Redisches returned to Hammock Dunes to meet with an architect about their future home, they rented an oceanfront condo during their stay. After spending time in the condo, the Redisches decided to sell the land and buy an oceanfront condo instead. They sold their land in the fall of 2003 for approximately $200,000.

The Redisches purchased an oceanfront condo (Porto Mar property) in April 2004 for $875,000.[2] The Porto Mar property was a seasonal home, and the Redisches never intended that it be, nor did it become, their primary residence. After purchasing the Porto Mar property the Redisches made some cosmetic changes, such as painting the condo and installing track lighting, carpet, and custom closets, and they purchased furniture.

---

[2]The parties stipulate that the Redisches' basis in the Porto Mar property is $884,975.

**[*4]**  The Redisches purchased the Porto Mar property for their personal use and often spent time there with their daughter.  Tragically, the Redisches' daughter passed away in 2006.  After that, the Redisches decided that they could no longer stay in the Porto Mar property.  Rather than selling it in 2008, the Redisches decided to rent it out because they believed that they could sell it later at a profit while generating cash in the short term.

Mr. Redisch contacted a realtor from Hammock Dunes Real Estate Co. (realty company) to assist him in renting out the Porto Mar property.  Hammock Dunes was still under development, and the realty company showed potential purchasers properties within the community, including those that were newly constructed.  Mr. Redisch selected this company because most of the realtors lived within the Hammock Dunes community and he believed they would be in the best position to rent out the Porto Mar property.  The realty company also operated an information center within the community that was staffed with realtors who would provide information and tours to potential buyers.  Mr. Redisch testified that he entered into a one-year contract with the realty company beginning around April 2008.  The Redisches intended to rent out the furnished Porto Mar property under a one-year lease that included the option to assume Mr. Redisch's golf membership.  Mr. Redisch determined the monthly rental price on the basis of

**[*5]** discussions he had with realtors that he knew and his past experience renting in the community.

The Redisches stopped staying at the Porto Mar property after their daughter passed away. In April 2008 they removed most of their personal belongings, but they would visit to ensure the Porto Mar property was in suitable condition for showings. The Redisches did not return in part because of the memories of spending time in the Porto Mar property with their daughter and in part because they had agreed to keep it available to the realty company to show at any time. The realty company maintained an on-call agent at all times to be available to prospective clients. The Redisches were not paid to keep the Porto Mar property available as a model, but the agents would let prospective clients know that it was available to rent. They changed one of the bedrooms into a child's room at the suggestion of the realty company to appeal to potential renters that were grandparents. The Redisches hoped that a potential buyer would decide to construct a home in Hammock Dunes and rent the Porto Mar property during construction, much as the Redisches had. The Porto Mar property was also featured in a portfolio of rental properties in the realty company's office. The Redisches did not offer any evidence to show the efforts that the realtor took to market the Porto Mar property outside Hammock Dunes.

**[*6]**   When the Redisches returned to Hammock Dunes, they stayed with Sue Barnes, a friend who also owned a condominium in an adjacent building.  The unit had two master bedrooms, and Ms. Barnes invited the Redisches to stay at her property for as long as they wanted, any time they wanted.  The Redisches had a key to Ms. Barnes' property and would assist her by receiving deliveries when she was away.  The Redisches would stay at Ms. Barnes' property for weeks or even months, but they did not pay her rent.

The Redisches received inquiries from two potential renters.  However, neither rented the Porto Mar property because one wanted to rent it for only two months and one had a large dog, both of which situations conflicted with building restrictions.

Because of lackluster interest in renting the Porto Mar property, the Redisches listed it for sale with a different agent in June 2009.  The Redisches still hoped to rent it out but were considering other options such as selling or leasing to own because other owners in the building were losing their properties to foreclosure and they were worried about how that would affect the price of the Porto Mar property.  Mr. Redisch remained in contact with the agent during 2009 to try to determine why they were not receiving offers.  In December 2009 the Redisches took the Porto Mar property off the market to obtain an appraisal in

[*7] order to price it more competitively. The Porto Mar property sold for $725,000 in December 2010. The furniture in the unit sold for $80,000.

The Redisches jointly filed Forms 1040, U.S. Individual Income Tax Return, for 2009 and 2010. Each return was prepared by a paid return preparer and included a Schedule E, Supplemental Income and Loss, claiming deductions relating to the Porto Mar property. Respondent examined the returns and issued a notice of deficiency on November 15, 2012, making several adjustments and determining deficiencies and accuracy-related penalties under section 6662(a). The Redisches, while residing in Michigan, timely petitioned. Subsequently, the Redisches amended their petition asserting that the sale of the Porto Mar property should have been reported on the 2010 Form 1040 as an ordinary loss instead of as a long-term capital loss as it was originally reported.

After concessions by both parties, the only issues remaining are whether the Porto Mar property was converted to a property held for the production of income such that Schedule E deductions are allowable, whether the Redisches are entitled to an ordinary loss deduction on the sale of the Porto Mar property, and whether the Redisches are liable for accuracy-related penalties under section 6662(a).

**[*8]**                              OPINION

I.  <u>Burden of Proof</u>

The Commissioner's determinations in the notice of deficiency are generally

presumed correct, and taxpayers bear the burden of proving otherwise.[3]  The

burden with respect to a factual issue may shift to the Commissioner under section

7491(a) if the taxpayer introduces credible evidence regarding the issue, has

complied with the necessary substantiation requirements, has maintained all

records, and has cooperated with reasonable requests by the Commissioner for

witnesses, information, documents, meetings, and interviews.  The Redisches do

not argue that the burden should shift, nor have they met the requirements under

section 7491(a).  Accordingly, the burden remains on them.

II.  <u>Conversion to a Property Held for the Production of Income</u>

Generally, no deduction is allowed for personal, living, or family expenses.[4]

However, an individual can deduct all ordinary and necessary expenses paid or

incurred during the taxable year "for the management, conservation, or

---

[3]Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

[4]Sec. 262(a).

**[*9]** maintenance of property held for the production of income".[5] The individual bears the burden of proving that a conversion to a profit-motivated purpose occurred.[6] That burden cannot be satisfied if the profit-motivated purpose was secondary to another purpose not motivated by profit.[7]

Whether an individual converted his personal property to one held for the production of income is a question of fact that "depends on the purpose or intention of the individual, as gleaned from all of the facts and circumstances".[8] In the case of a converted residence, the Court often looks to five factors to determine the taxpayer's intent: "(1) the length of time the house was occupied by the individual as his residence before placing it on the market for sale; (2) whether the individual permanently abandoned all further personal use of the house; (3) the character of the property (recreational or otherwise); (4) offers to rent; and (5)

---

[5]Sec. 212(2).

[6]Meredith v. Commissioner, 65 T.C. 34, 41-42 (1975).

[7]Murphy v. Commissioner, T.C. Memo. 1993-292.

[8]Grant v. Commissioner, 84 T.C. 809, 825 (1985), aff'd without published opinion, 800 F.2d 260 (4th Cir. 1986).

**[\*10]** offers to sell."[9]  No one factor is determinative, and we consider all of the facts and circumstances.[10]

Similarly, section 165(a) allows a deduction for any loss sustained during the taxable year that is not otherwise compensated.  However, in order for an individual to deduct such a loss, the loss must be incurred in a trade or business, be incurred in any transaction entered into for profit, though not connected with a trade or business, or arise from some sort of casualty or theft.[11]  An individual can claim a loss under section 165(a) on property purchased or constructed as a primary residence if, before its sale, it is "rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale".[12]

After considering all of the facts and circumstances, we find that the Porto Mar property was not converted to a rental property.  The Redisches used the Porto Mar property for four years before abandoning personal use of it in April

---

[9]Grant v. Commissioner, 84 T.C. at 825; Newcombe v. Commissioner, 54 T.C. 1298, 1300-1302 (1970).

[10]Saunders v. Commissioner, T.C. Memo. 2002-143, aff'd, 75 Fed. Appx. 494 (6th Cir. 2003).

[11]Sec. 165(c).

[12]Sec. 1.165-9(b), Income Tax Regs.

[*11] 2008. Although Mr. Redisch testified that he signed a one-year agreement with a realty company to rent the Porto Mar property, he did not provide any other evidence of such an agreement. Even if the Redisches had produced the contract, Mr. Redisch stated that the efforts of the realty company to rent out the Porto Mar property were limited to featuring it in a portfolio kept in the company's office and telling prospective buyers that it was available when showing it as a model. It is unsurprising that this minimal effort yielded only minimal interest. Mr. Redisch did not testify regarding any other tactics that he attempted to employ to rent out the Porto Mar property other than getting a new real estate agent. Mr. Redisch also did not provide any evidence, beyond a copy of a multiple listing service listing of the Porto Mar property, of the actions taken by the second agent to rent out the home. Accordingly, we find that the Redisches did not make a bona fide attempt to rent out the Porto Mar property and therefore did not convert it to one held for the production of income. Consequently, the Redisches are not entitled to deductions under section 212 or a loss deduction under section 165 relating to the Porto Mar property.

## III. Accuracy-Related Penalties

Section 6662(a) and (b)(1) and (2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return if the

**[\*12]** underpayment is due to, among other reasons, negligence, disregard of rules or regulations, or any substantial understatement of income tax.  Respondent bears the burden of production with respect to any penalty or addition to tax.[13]  The Redisches then bear the burden of proving any defenses.[14]

An understatement of income tax is "substantial" if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000.[15]

In accordance with this opinion, the Redisches' exact underpayment for each year depends on the Rule 155 computations.  If these computations establish a substantial understatement of income tax for either year, respondent has met his burden with respect to that year.[16]  Respondent made no showing as to negligence.

The Redisches have failed to prove any defenses.  Although they stated that their return was completed by a paid return preparer, the Redisches provided no

---

[13]See sec. 7491(c).

[14]Sec. 6664(c)(1).

[15]Sec. 6662(d)(1)(A).

[16]See Olagunju v. Commissioner, T.C. Memo. 2012-119; Jarman v. Commissioner, T.C. Memo. 2010-285.

**[*13]** information about the paid return preparer or what information the paid return preparer used to prepare the return.

Accordingly, we sustain the penalties under section 6662(a) for 2009 and 2010 if the Rule 155 computations establish substantial understatements of income tax.

IV. Conclusion

On the basis of our examination of the record before us and the parties' arguments at trial, we find that the Redisches are not entitled to deductions under section 212 or a loss deduction under section 165 for the Porto Mar property because they did not convert it to a property held for the production of income. Further, they are liable for an accuracy-related penalty for each year.

To reflect the foregoing and the concessions of the parties,

Decision will be entered under

Rule 155.